STEPHEN G. HYATT *vs.* ALVIN H. PHILLIPS.

Hampden.     April 6, 1936. — May 25, 1936.

Present: RUGG, C.J., PIERCE, FIELD, & DONAHUE, JJ.

*Landlord and Tenant,* Heating apparatus, Landlord's liability to tenant.

Evidence that a landlord was in control of the steam heating apparatus in an apartment and that, in removing a radiator in the apartment at the tenant's request in the spring, an employee of the landlord should have anticipated that a valve might be left loose and, if not tightened, would permit steam to escape into the apartment when the steam again was turned on, warranted a finding that the landlord was liable to the tenant for damage to his personal effects due to steam escaping, when it was turned on in the fall, from a valve left loose by the employee in the spring.

TORT, originally CONTRACT OR TORT.    Writ in the Superior Court dated December 21, 1931.

The action was tried before *O'Connell,* J.    There was a verdict for the plaintiff in the sum of $425.    The defendant alleged exceptions.

The case was submitted on briefs.

*T. T. Murray & E. T. Collins,* for the defendant.

*I. Gelin,* for the plaintiff.

PIERCE, J.    This is an action to recover for damage to the household effects and other personal property of the plaintiff, while a tenant of the defendant, caused by the escape of steam in the plaintiff's apartment which was due to the alleged negligence of the defendant.    The plaintiff's writ originally sounded in contract or tort, but at the trial the plaintiff amended his writ to sound in tort alone.    The declaration reads as follows: "The plaintiff says that he is and on or about November 26, 1931, was, a tenant of the

defendant occupying an apartment in the premises of the defendant located on Dickinson Street, Springfield, in said Hampden County; that on or about said November 26, because of the negligence of the defendant, a steam pipe in the apartment occupied by the plaintiff, which pipe was under the control of the defendant, leaked, causing steam and/or water to enter in his said apartment causing him great damage to his household goods, effects and other personal property." The defendant's answer consists of a general denial and an allegation of contributory negligence. At the close of the evidence the defendant moved for and the judge refused to order a verdict for the defendant. The defendant excepted. The plaintiff had a verdict, concerning the amount of which there is no controversy. The case is before this court on the defendant's exception duly saved.

The pertinent facts most favorable to the plaintiff, as shown by the record, in substance are as follows: In 1931, the plaintiff became a tenant at will of the defendant. With his wife, and no one else, he occupied an apartment consisting of three rooms and bath, on the second floor of the defendant's apartment house. The defendant was in control of the steam heating system, the pipes leading to the plaintiff's apartment, and the radiators therein, and, as landlord, was required to furnish heat to the plaintiff's apartment under the terms of the plaintiff's tenancy.

The heating plant maintained in the premises in question was operated by a janitor who lived on the premises. The supply pipe was connected with the radiator in the bedroom of the apartment occupied by the plaintiff by a valve, which was given to the jury on their retiring and was exhibited at the argument to this court. "This valve stands about seven inches in height. It consists of a round hollow piece of brass about three and one half inches in height with a threaded round opening one and one half inches in diameter at the bottom, designed for connection with a steam pipe coming up from a steam boiler. On one side of the valve and at right angles to the opening at the bottom is another opening

of substantially the same size, designed for connection to a steam radiator. A stem about six inches in height with handle on top runs perpendicularly through an opening at the center of the top of this piece of brass. At the bottom of the stem and enclosed within the valve is a round disk about the size of the opening at the base. When the stem is lowered its full extent, the disk is designed to close against the seat of the valve and thus prevent steam entering from the steam pipe. When the stem is raised the valve is open and thus steam is permitted to enter and pass out through the side opening into the radiator, assuming a radiator is connected, and if no radiator is connected, the steam would pass out into the room. The stem works on a screw arrangement by turning the handle. A jam nut surrounds the stem under which is usually a packing that prevents steam escaping around the stem when valve is open."

In the spring of 1931, the defendant's janitor, at the request of the plaintiff, removed a radiator from the bedroom of the plaintiff's apartment, leaving affixed to the supply pipe the hand shut-off valve above described. The plaintiff was present when the radiator was removed and suggested that the janitor take the valve off; this the janitor attempted to do but failed to accomplish for lack of an additional needed wrench. There is no evidence in the record that the janitor removed the valve or that before the escape of steam on November 26, 1931, he inspected the radiators and valves in the plaintiff's apartment.

It appears that steam was turned on in the fall about a month before November 26, 1931, and prior to this date neither the plaintiff nor his wife noticed any water or steam around the floor near this valve or noticed any leaking anywhere. In this regard the janitor, who was called as a witness by the plaintiff, testified: "I had no complaints as to escaping steam or water previous to this date [date of accident] from that valve" (in plaintiff's bedroom) and "I had never seen any water or steam about the radiator previous to that date."

On November 26, 1931, the plaintiff left his apartment

early in the morning.  His wife left it between ten and
ten-thirty in the morning and at that time had not noticed
any leaking or heard any steam escaping from the valve.
Neither the plaintiff nor his wife touched the valve after
the radiator was removed or knew of anyone who had
touched it.   When the plaintiff returned at 11:30 A.M. he
found the apartment filled with steam so dense that he
could not enter for a few minutes.   After he was able to
enter he traced the source of this water and steam to the
valve in the bedroom.   A baker came up from the apart-
ment directly under the plaintiff's apartment with tools
and wanted to know where the water was coming from.
He applied the wrench to the nut, and tightened it.   The
nut was very loose.   After the nut was tightened the steam
stopped passing through.   When the plaintiff came home
he found the handle on the valve was loose, as was also the
nut; he turned it down slightly, "maybe one or one and
a half turns" but could not say definitely as to complete
revolutions of the handle.

The defendant does not contend that the janitor had not
authority to remove the radiator, or that he had not author-
ity to reinstall the radiator, as he did after the escape of
the steam.   His contention is that on the facts he owed
no duty of keeping the pipe and valve in repair because the
act of removing the radiator was a gratuitous act, and the
failure of the defendant to make sure that the valve was
closed and the nut left tight after the separation of valve
and radiator was an act of nonfeasance as distinguished
from misfeasance of the defendant.   *Gill* v. *Middleton*, 105
Mass. 477.   *Tuttle* v. *George H. Gilbert Manuf. Co.* 145
Mass. 169, 175.   *McKeon* v. *Cutter*, 156 Mass. 296.   The
plaintiff does not rest his case upon the distinction between
misfeasance as negligence and nonfeasance as negligence in
determining whether an action of tort will lie, but rests it
upon the fact that the jury might warrantably find on the
evidence that the janitor was reasonably bound to know
that it was not improbable that the stem of the valve would
be raised somewhat and the jam nut and packing loosened;
and, finding that such was the fact, the jury could war-

rantably find that the janitor should have anticipated such condition and that it was his duty before turning on the steam to examine the valve in the plaintiff's bedroom.

*Exceptions overruled.*