JAMES M. MᴄKEON *vs.* LEONARD R. CUTTER.

Suffolk.　January 20, 1892. — May 9, 1892.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Landlord and Tenant — Repair of Water Pipes — Admission.*

The rule that the letting of a house does not imply that it is fit, or will continue fit, for the purposes for which it is let, applies equally to the case of the letting of several rooms in a tenement house, if they pass out of the control of the landlord into the exclusive possession of the tenant.

Where the property of a tenant of several rooms in a tenement house was injured by water leaking from the pipes therein, the only use of which pipes was to supply water to such rooms, it was *held* that the tenant could not maintain an action against the landlord for such injuries.

The making repairs by a landlord, at the request of the tenant, upon the water pipes in the latter's tenement, is a gratuitous act upon the part of the landlord, and does not impose any liability upon him.

TORT for injury to the plaintiff's goods, caused by the leaking of water from pipes which the plaintiff contended the defendant was bound to keep in repair, but had negligently suffered to be out of repair.

At the trial in the Superior Court, before *Bond*, J., it appeared that the plaintiff hired, as tenant at will, a flat or tenement of six rooms and a bath-room in the defendant's house in Boston, which house contained four separate tenements; that the plaintiff's tenement was supplied with cold water by a pipe leading thereto from the street main, and with hot water from a tank in the attic, from which water was conducted down to the top of the hot-water boiler back of the range of the plaintiff's kitchen; that there was no other use made of the water pipes in the plaintiff's tenement, except to supply water to the plaintiff's tenement, and that the leaks complained of occurred in the pipes in the plaintiff's tenement.

It appeared that while the plaintiff and his wife were temporarily absent a leak occurred in the pipe at the top of the bath-room, and the escaping water injured the plaintiff's carpet; that on the return of the plaintiff's wife she was informed that the plaintiff's servant, who had remained in the tenement, had sent to the defendant's agent to have the pipe repaired, and that

on the next day the defendant's agent came and shut off the water and stopped the leaking; that the next week the hot-water pipe sprang a leak, and water began to drop therefrom slowly on to the kitchen floor; that the plaintiff's wife then sent word to the defendant's agent again to come and repair this pipe, and the agent sent word that he would have his plumber attend to it as soon as he could, but did not say when; that on the second day the plaintiff's wife sent for a plumber herself, and had the repairs made, as the defendant's plumber did not come; that after the repairs had been made, the agent came with two men, but was informed that the repairs had been made; that the damage done, especially to rugs and carpets, was considerable; and that the pipe where the last mentioned leak occurred was poor and worn out.

The plaintiff contended that the above evidence, and the condition of the pipe, a piece of which was shown to the jury, showed negligence on the part of the defendant in allowing it to remain in that condition.

The court ruled, at the request of the defendant, that the action could not be maintained, and directed a verdict for the defendant; and the plaintiff alleged exceptions.

*E. J. Jenkins & W. B. Orcutt*, for the plaintiff.

*S. J. Elder & W. C. Wait*, (*G. D. Bigelow* with them,) for the defendant.

LATHROP, J. The rule that the letting of a house does not imply that it is fit, or will continue fit, for the purposes for which it is let, applies equally to the case of the letting of several rooms in a tenement house, if they pass out of the control of the landlord into the exclusive possession of the tenant. See *Looney* v. *McLean*, 129 Mass. 33.

In the case at bar, the exceptions state that "there was no other use made of the water pipes in the plaintiff's tenement, except to supply water to the plaintiff's tenement," and that "the leaks complained of occurred in the pipes in the plaintiff's tenement." The case in this respect differs essentially from *Priest* v. *Nichols*, 116 Mass. 401, where the pipe was not for the use of the tenants, but was for the use of the landlords, who occupied the floor above that occupied by the tenants.

The plaintiff further contends, that the evidence would have

warranted the jury in finding that the defendant, through his agent, made repairs on the pipe ; and, if they so found, that they might also have found that such repairs amounted to an admission of liability.   In *Readman* v. *Conway*, 126 Mass. 374, where the defendants owned several shops and a platform in front of all of them, and a person was injured by a defect in the platform, the fact that the defendants subsequently made repairs upon the platform was held to be competent, as in the nature of an admission that it was their duty to keep the platform in repair.   But this was because the evidence was conflicting upon the question whether, by the terms of the oral leases, the landlords were to keep in repair the whole of the platform, or each tenant was to keep in repair the part in front of his shop.

In the case at bar, if we assume that the jury would have been warranted in finding that the defendant made repairs on the pipes, we are of opinion that the case was rightly taken from the jury.   There was no conflict of evidence as to the terms of the letting.   The law imposed the duty on the plaintiff to keep the pipes in repair.   If the defendant, at the request of the plaintiff, made repairs upon the pipes, this would be a gratuitous act, which would not impose any liability upon him. The ruling that the action could not be maintained was, therefore, right.                              *Exceptions overruled.*