208 A.2d 743.

MARION POMFRET *vs.* RONALD L. FLETCHER *et ux.*

MARCH 29, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin,. JJ.

CONDON, C. J. This is an action of trespass on the case by a tenant, Marion Pomfret, against her landlords, Ronald L. and Margaret F. Fletcher, husband and wife, for negligence in permitting a dangerous condition on a common walk of the rented premises to exist due to ice and snow. The case was tried to a justice of the superior court without a jury and resulted in a decision for the plaintiff. The defendants duly excepted thereto and have brought the case here by their bill of exceptions to such decision and to certain evidentiary rulings.

The plaintiff fell on the common walk which ran along the side of defendants' house from the front to the rear yard. The house was a duplex cottage which had been divided into two apartments. The plaintiff rented the front apartment and defendants occupied the rear apartment. In the rear yard defendants had provided receptacles for garbage and rubbish. The only access to the rear yard from plaintiff's front apartment was by means of the common walk. It was plaintiff's custom to use the walk two or three mornings a week between 7 and 7:30 o'clock to dispose of her garbage and rubbish. On the morning of January 13, 1960 the walk was icy in spots which had been covered by a light fall of snow during the night.

On that morning between 7 and 7:20 o'clock plaintiff left her apartment and proceeded slowly along the walk to the

rear yard to dispose of some garbage when suddenly she slipped on an icy spot and fell on her back and hit her head. She could not get up immediately and she testified that while she was lying there defendant Margaret F. Fletcher came out "evidently, to put salt or something" on the walk. Over objection she was asked if Mrs. Fletcher said anything to her at that time and plaintiff answered, "She said that she was coming around to put salt on the walk. Her husband had been back and asked her to do it. That it was slippery." The witness was then asked if Mrs. Fletcher had said anything further and replied, "She said she should have got around there sooner." The defendants moved to strike this latter testimony. The motion was denied and such denial is the subject of the first evidentiary exception.

Mrs. Fletcher did not testify. Mr. Fletcher testified that on January 13, 1960 he left his apartment at about 7:10 or 7:11 a.m. and went along the walk at the side of the house; that he noticed a slippery spot; and that he went back into the house and told his wife, " 'You better get some salt out there because Marion might slip.' " He then went on his way to his work where he was due at 8 a.m. He testified further that when he left, his wife "went to get the salt." In rebuttal he was cross-examined as to whether he had sanded the walk on prior occasions. Over objection he answered, "If we ran into a bad storm, sleet and ice storm and the walk was covered with ice, slippery conditions, I would put some sand on it." This is the subject of the second evidentiary exception.

On the view which we take of defendants' third exception it will not be necessary to consider their first and second exceptions. For the purpose of determining whether the trial justice erred in holding defendants liable for the icy condition of the walk we shall assume without deciding that all the evidence before her was properly admitted. In this connection it should be noted that such evidence was undisputed and therefore the only question the trial justice

had to determine was one of law, namely, whether defendants' owed a duty to plaintiff to keep the walk free from a dangerous condition due to the natural accumulation of ice and snow.

Under their third exception defendants contend that they owed no such duty to plaintiff and therefore the trial justice erred in holding as she did that they were liable for the injuries plaintiff sustained by slipping and falling on the icy spot on the walk. Whether a landlord is liable to his tenant for injuries sustained by slipping and falling as a result of the accumulation of ice and snow on a common passageway of the rented premises from entirely natural causes is a question upon which the decided cases are not in agreement. An unbroken line of Massachusetts cases has answered the question in the negative. *McNeill* v. *Home Savings Bank*, 313 Mass. 664; *Boulton* v. *Dorrington*, 302 Mass. 407; *Rogers* v. *Dudley Realty Corp.*, 301 Mass. 104; *Smolesky* v. *Kotler*, 270 Mass. 32; *O'Donoughue* v. *Moors*, 208 Mass. 473; *Woods* v. *Naumkeag Steam Cotton Co.*, 134 Mass. 357. The following cases from other jurisdictions are in accord: *Harkin* v. *Crumbie*, 46 N. Y. Supp. 453; *Gianpaola* v. *Paoli*, 129 N. Y. Supp. 180; *Morse* v. *Houghton*, 158 Iowa 279; *Holcomb* v. *Szymczyk*, 186 Wis. 99; *Rankin* v. *Ittner Realty Co.*, 242 N. Y. 339; *Turoff* v. *Richman*, 76 Ohio App. 83; *Lumley* v. *Backus Mfg. Co.*, 73 Fed. 767. See also Annot. II, 26 A.L.R.2d 615. In the same note a long list of cases *contra* appears.

We have not heretofore had occasion to pass upon this precise question. *DeMello* v. *Saint Thomas the Apostle Church Corp.*, 91 R. I. 476, cited by plaintiff is not in point. There, although the plaintiff slipped on ice covering the church walk the following was the only question before us on all the defendant's exceptions: "Was the plaintiff a licensee or an invitee while on land controlled by defendant?" Hence we do not agree with plaintiff's contention that to adopt the Massachusetts rule enunciated in the

above-cited cases would in view of our holding in *DeMello* "create an anomaly in our law." Nor do we agree with her further contention that the duty a landlord owes to his tenant in the use of a common passageway "is the same as that owed to a business invitee."

The relation of a landlord to his tenant with reference to the condition of the rented premises is markedly different from the relation of an invitor to his business invitee. Perhaps it was due to this difference that no reference was made by counsel in *DeMello* to the rule governing the duty of a landlord to his tenant with which we are concerned here.

After consideration of the authorities on both sides of the question we are of the opinion that the Massachusetts rule is preferable to the contrary rule in certain other jurisdictions regardless of their numerical weight. We realize that it has met with sharp criticism in *Reardon* v. *Shimelman*, 102 Conn. 383, and *United Shoe Machinery Corp.* v. *Paine*, 26 F.2d 594, but we are not persuaded that such criticism has destroyed or seriously impaired the reasoning upon which the Massachusetts cases rest.

In *O'Donoughue* v. *Moors, supra,* there was a fall of snow on a granolithic walk leading from the tenant's apartment to the street. The plaintiff fell on the ice and snow which the landlord had failed to remove. In denying liability the court said at page 475: "The defect upon the walk on which she fell was due entirely to natural causes, the combination of rain and snow with freezing weather. He had made no agreement and there was nothing to show any duty on his part to guard against or to remedy such a condition." And the court pointed out that a landlord was not liable for the dangerous condition of a common passageway where the condition was created by such a combination and not by a defect in the walk or the building or by reason of the snow being trampled upon.

In *Boulton* v. *Dorrington, supra,* the court had previously held that in the absence of a special undertaking on his part a landlord of an apartment house owed his tenant no duty to cover a porch used in common and to remove snow and ice naturally accumulating thereon. On the day of the accident the tenant fell on ice upon the porch steps. The icy condition was due solely to the weather. In the circumstances the court held that the defendant was not liable for the plaintiff's injury absent evidence in the record of any defect in the porch which contributed to the dangerous condition.

However, in the case at bar plaintiff argues that even under the Massachusetts rule the landlord is held liable where he has assumed the duty as a term of the tenancy. And she seeks to bring her case within the compass of this subsidiary rule on the basis of the undisputed evidence that defendants here customarily salted or sanded the walk when snow or ice created a condition which required such action. In our opinion this evidence is insufficient to establish the duty as a term of the tenancy. There is no evidence in the record that defendants performed this service under any agreement with plaintiff at the inception of the tenancy. At most it was a gratuitous service occasionally performed solely at the option of defendants and as much for their own personal benefit as for the tenant.

Moreover it is clear from the decided cases in Massachusetts that something much more is required to establish by implication the liability of the landlord notwithstanding the general rule. For example in *Bell* v. *Siegel,* 242 Mass. 380, the court had occasion to pass upon a situation analogous to the one before us in the case at bar. There the tenant fell on ice on the front steps of the rented premises, a two-story dwelling. The tenant occupied the second floor, the landlord lived on the first floor, and the front steps were used in common. It appeared that the landlord had gratuitously cleared the steps a few times but there was no con-

tractual undertaking as a part of the letting. The ice had accumulated naturally and not as a result of any negligent or wrongful act of the landlord. The court held that the circumstances raised no duty on the landlord to remove the ice and snow notwithstanding there was evidence that a few days before the accident the tenant referring to the steps told the landlord, " 'It is very dangerous, somebody will be hurt,' " to which the landlord replied, " 'I will try to clean . . . [the steps] up.' " It also appeared that the landlord had removed the ice a few times previously. Another witness testified that he had told the landlord that he should clean off the ice and that he said, " 'I will take care of it.' " A similar holding is *McKeon* v. *Cutter,* 156 Mass. 296, in which there was no consideration upon which to base an implied contractual liability on the part of the landlord.

It is interesting to note and possibly indicative of this court's inarticulate approval of the Massachusetts rule that in *Whitehead* v. *Comstock & Co.,* 25 R. I. 423, *McKeon* v. *Cutter* was cited as authority for exonerating the landlords from liability in the following situation. The tenant fell on ice on a plank which the landlords had placed in the cellar of the rented premises for the tenant's use. The plaintiff contended that his fall was due to the negligence of the landlords in failing to discharge their duty to keep the plank safe for the use for which it was provided. The court rejected such contention and held that the landlords were chargeable with no such duty, particularly the duty to keep the plank free from ice. Providing the plank, it said, was an accommodation, "and as they [the landlords] received no consideration therefor and made no promise, either express or implied, as to maintaining the same, no liability attached to them by reason of this act."

On the whole after examining the decisions which have rejected the Massachusetts rule we are of the opinion that it is better suited to the capricious winter climate of this region and that to adopt the view enunciated in the deci-

sions *contra* would put too great a burden upon a landlord, especially in the circumstances of the instant case. This was substantially the reason advanced in *Lumley* v. *Backus Mfg. Co., supra,* where the court of appeals for the second circuit held that the landlord was not liable for the formation of ice and snow solely from natural causes in view of the known variability of the winter climate in New York City.

The defendants' third exception to the decision on the ground that it is against the law is sustained. The plaintiff may appear in this court on April 5, 1965 and show cause if any she has why the case should not be remitted to the superior court with directions to reverse the decision and enter judgment for the defendants.

JOSLIN, J., dissenting. It is settled in this state that a possessor of land owes a duty to his business invitee to maintain his premises in a reasonably safe condition consistent with the purposes of the invitation. *McVeigh* v. *McCullough,* 96 R. I. 412, 192 A.2d 437; *DeMello* v. *Saint Thomas the Apostle Church Corp.,* 91 R. I. 476; *Lapierre* v. *Greenwood,* 85 R. I. 484; *Langley* v. *F. W. Woolworth Co.,* 47 R. I. 165.

It is equally well established that a possessor of land, who leases a portion thereof and retains in his own control any other portion which is used in common by his tenants, owes a duty to his tenants to maintain the part retained in a reasonably safe condition consistent with its prospective use. *Reek* v. *Lutz,* 90 R. I. 340; *Allen* v. *William H. Hall Free Library,* 68 R. I. 80; *Leonick* v. *Manville Jenckes Corp.,* 60 R. I. 247. The obligation extends to passageways or sidewalks outside the demised premises. *Lawton* v. *Vadenais,* 84 R. I. 116.

We have at least inferentially recognized that a possessor breaches his duty to a business invitee if he unreasonably either fails to remove a natural accumulation of ice or snow from a sidewalk or otherwise neglects to make the same safe

for passage. *Stapleton* v. *Hyman,* 69 R. I. 466. I find nothing in reason or logic which compels a contrary conclusion where the claimant is a tenant whose injury has been sustained because of such an accumulation on a sidewalk within the retained control of his landlord.

The majority says that the Massachusetts rule "is better suited to the capricious winter climate of this region." The prevailing climatic conditions do not persuade me that snow and ice accumulation cases should be excepted from the general rule, nor has it influenced the courts in other areas at least as accustomed as we are to the rigors of winter. *Reardon* v. *Shimelman,* 102 Conn. 383; *Ahearn* v. *Roux,* 96 N. H. 71; *Massor* v. *Yates,* 137 Ore. 569; *Robinson* v. *Belmont-Buckingham Holding Co.,* 94 Colo. 534.

In view of the majority's conclusion, I do not consider whether the period intervening between the defendant husband's observation of the accumulation on the sidewalk and the plaintiff's injury was of sufficient duration for the sidewalk to have been made safe for passage or for timely warning to have been given of its condition.

ROBERTS, J., concurs in the dissenting opinion of Joslin, J.

*James J. McAleer, Joseph V. Cavanagh,* for plaintiff.

*Pontarelli & Berberian, Aram K. Berberian,* for defendants.