Ann Marie TERRY

v.

## CENTRAL AUTO RADIATORS, INC.

No. 98–108–Appeal.

Supreme Court of Rhode Island.

July 1, 1999.

Paul S. Cantor, Providence, for Plaintiff.

Mark C. Hadden, James R. Baum, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on May 19, 1999, pursuant to an order directing the parties to appear and show cause why the issues raised in the plaintiff's appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we conclude that cause has not been shown and we proceed to decide the plaintiff's appeal at this time.

In this negligence case, the plaintiff, Ann Marie Terry (plaintiff), seeks review of the trial court's entry of judgment as a matter of law in favor of the defendant Central Auto Radiators, Inc. (defendant).

## I

### Case Travel—Facts

On January 9, 1991, at approximately 10 a.m., the plaintiff brought her automobile to the defendant's place of business for repair. She parked it at the front of the shop leading to the repair bays and was told that she could return for it later in the day. At that time, and throughout the whole day into the evening, the weather consisted of a mixture of snow and freezing rain. When the plaintiff returned at

approximately 4:00 p.m. to pay for the repairs and to retrieve her automobile, it was nowhere to be seen. She was informed that the car had been repaired and had been placed behind the defendant's business premises some one hundred feet distant.

After paying for the repair charges, she was handed the keys to her automobile and told to go and get the vehicle. At the same time, Michael Wirkerman, one of the defendant's employees, told her to be careful in walking to the rear of the building because of the icy conditions. The plaintiff safely managed the long walk along the side of the defendant's building, but upon reaching the rear area, she slipped and fell on rutted ice and was injured. She later filed this civil action for damages in the Superior Court.

The plaintiff's case was reached for trial before a jury. Following the presentation of her case in chief, the defendant moved for judgment as a matter of law. The trial justice, relying upon our holding in *Fuller v. The Housing Authority of Providence*, 108 R.I. 770, 279 A.2d 438 (1971), concluded that the defendant business invitor owed no duty to the plaintiff business invitee to remove snow, or ice or to sand or salt any icy areas on its premises during the ongoing storm, but could wait a reasonable time after the storm had ceased before having any duty to do so. The plaintiff's appeal followed.

In this appeal, the plaintiff contends that the defendant, by requiring her to walk some one hundred feet over unfamiliar icy terrain to retrieve her automobile, served to exacerbate the normal risk that she reasonably expected to encounter had her automobile been placed in a convenient and accessible place. She asserts that the defendant, by forcing her to walk that extended distance under dangerous icy conditions, created an "unusual circumstance." That unusual circumstance, she claims, served to revive the defendants hitherto postponed duty under *Fuller* and required the defendant to take some affirmative action to alleviate the increased risk that it had created in addition to and apart from the ongoing storm.

## II

### Analysis

"When reviewing the decision of a trial justice on a motion for judgment as a matter of law, this Court, like the trial justice, views the evidence in the light most favorable to the nonmoving party and gives to that party the benefit of all reasonable and legitimate inferences that may properly be drawn from the evidence, without weighing the evidence or assessing the credibility of the trial witnesses." *Morrocco v. Piccardi*, 713 A.2d 250, 252–53 (R.I.1998). "If there is evidence supporting the nonmoving party's position or evidence upon which reasonable minds could differ, the jury is entitled to decide the facts, and the motion for judgment as a matter of law should be denied." *Id.* at 253.

As a preliminary matter, we must first determine whether any legally cognizable duty existed on the part of the defendant to the plaintiff. *See Kenney Manufacturing Co. v. Starkweather & Shepley, Inc.*, 643 A.2d 203, 206 (R.I.1994). "[N]o clear-cut formula for creation of a duty exists that can be mechanically applied to each and every negligence case." *Id.* We noted in *Ferreira v. Strack*, 636 A.2d 682 (R.I. 1994) that:

"In the past this court has recognized the difficulty of crafting a workable test to determine whether a duty exists in a particular case. * * * ('[T]he problem of duty is as broad as the whole law of negligence, and * * * no universal test for it ever has been formulated') * * *. This court has avoided 'definitively committing itself to [a specific] * * * analytical approach' and has instead adopted an ad hoc approach of considering all relevant factors. * * * ([T]he test to determine duty remains nebulous). We recognize that the factors

utilized in a particular case should reflect considerations of public policy, as well as notions of fairness." *Id.* at 685.

Consequently, on the particular circumstances of this case, the first issue we address is whether the defendant owed the plaintiff any duty to maintain in a reasonably safe condition that portion of its premises over which it directed the plaintiff to walk. In addressing that issue, we premise our considerations upon the defendant's actions in placing the plaintiff's vehicle where it had, because we believe that such action determines the scope of any duty owed to the plaintiff. *See Haynesworth v. D.H. Stevens Co.,* 645 A.2d 1095, 1098 (D.C.App.1994).

In this case, we pick up from where we left off in *Fuller.* In *Fuller,* we abandoned our earlier holding in *Pomfret v. Fletcher,* 99 R.I. 452, 208 A.2d 743 (1965),[1] wherein we had adopted the snow and ice facet of landlord and tenant law as espoused in the so-called no duty/no-liability Massachusetts Rule, and instead, opted for the so-called Connecticut Rule, conceived in *Reardon v. Shimelman,* 102 Conn. 383, 128 A. 705 (1925). *Fuller,* 108 R.I. at 774, 279 A.2d at 441.

In adopting the Connecticut Rule, with specific reference to a landlord-tenant situation, we acknowledged that while a landlord "is not a guarantor for the safety of his [or her] tenants," the landlord does have a duty to reasonably maintain those portions of the premises "reserved for the common use of his [or her] tenants" and can be held "liable for injuries sustained by his [or her] tenant which are due to * * * an accumulation" of snow and ice. *Fuller,* 108 R.I. at 774, 279 A.2d at 441. However, we added that the landlords duty during an ongoing storm was suspended and the landlord "must be given a reasonable time after the storm has ceased to remove the accumulation of snow or ice found on the common ways or to take such

measures as will make the common areas reasonably safe * * *." *Id.* In short, we simply provided that during a snow storm, a landlord has no immediate duty to shovel snow, or remove or salt and sand ice, because such duty is postponed for at least a reasonable period after the storm has abated. *Id.*

■ In this case, we do not have before us a landlord-tenant situation; rather, we have that of a business invitor and its business invitee involved in a situation in which the invitee fell and was injured on the business premises during an ongoing snow and freezing sleet storm. We believe in such a case, the business invitor, like the landlord, is not a guarantor for the safety of those persons who might be expected to come upon its property. However, as we know, the business invitor does have a duty to maintain the business premises in a reasonably safe condition for the purpose of the invitations that are made to the prospective business invitees. *See O'Brien v. State,* 555 A.2d 334, 338 (R.I.1989); *Shea v. First National Stores, Inc.,* 63 R.I. 85, 7 A.2d 196 (1939).

■ The question that then presents itself to us in this case is two-fold. First, does the Connecticut Rule apply to a business invitor/business invitee situation? Second, is the business invitor's duty to maintain in a reasonably safe condition those portions of the business premises that are expected to be used by its business invitees postponed during a snow or ice storm? We believe that both questions should be answered in the affirmative, tempered however, with the caveat expressed in *Fuller,* that the business invitor is given a reasonable time after the storm has ceased to remove the accumulation of any snow or ice or to take some such measures as will make the owner's premises "safe from the hazards arising from such a condition." *Fuller,* 108 R.I. at 774,

---

1. Both *Fuller v. The Housing Authority of Providence,* 108 R.I. 770, 279 A.2d 438 (1971) and *Pomfret v. Fletcher,* 99 R.I. 452, 208 A.2d 743 (1965) were decided by divided (3–2) Court majority opinions.

279 A.2d at 441. Accordingly, we continue to follow the Connecticut Rule as intended by *Fuller*.[2]

However, the Connecticut Rule, as it has been both recognized and explained in its place of origin, is somewhat more expansive than as initially referenced by this Court in *Fuller*. The actual and complete Connecticut Rule permits a landlord, or in this case the business invitor, to "await a reasonable time after the end of a storm to clear snow and ice *'only in the absence of unusual circumstances.'* " *Cooks v. O'Brien Properties, Inc.*, 48 Conn.App. 339, 710 A.2d 788, 792 (1998) (quoting *Kraus v. Newton*, 211 Conn. 191, 558 A.2d 240, 243 (1989)). (Emphasis added.) In *Cooks*, the defendant there had requested a jury instruction as follows:

> "If you find that the plaintiff fell during an ongoing storm of freezing rain, sleet and/or snow, and that the ice or snow caused the fall, then you *must* find for the defendants." *Cooks*, 710 A.2d at 792.

That requested instruction mirrors the defendant's argument in this case and is precisely the reason given by the trial justice in granting the defendant's motion for judgment as a matter of law. However, as Justice DuPont, writing for the Connecticut Appellate Court noted, the "requested charge does not state correctly the [Connecticut Rule]" because it fails to add that the landlords duty to await a reasonable time after the storm to clear snow and ice is postponed *"only in the absence of unusual circumstances." Id.* at 792. (Emphasis added.)

■ The obvious and crucial question that then arises in this appeal is whether, on the facts of this particular case, did any *unusual circumstance* exist during the storm in question that served to remove the defendant's cloak of exemption from its duty to make that particular portion of its business premises, over which it directed the plaintiff to traverse, reasonably safe for the plaintiff's use. Whether any particular duty did emerge from the relevant trial evidence in this case was in the first instance a question of law to be decided by the trial justice. *See Kenney Manufacturing Co.*, 643 A.2d at 207. The trial justice in this case did not, however, consider whether any unusual circumstance existed, but simply applied a storm-in-progress/no-duty/end-of-consideration approach. We believe that an unusual circumstance in this case did arise and that the trial justice, pursuant to his obligation to view all of the evidence in a light most favorable to the plaintiff, erred in failing to recognize the existence of that unusual circumstance.

That unusual circumstance was that when the plaintiff, who in early winter dusk and during an ongoing storm, had returned to pick up her automobile at a place where she had originally left it with the defendant, she found that it was no longer there. Instead, it had been removed by one of the defendant's employees to a rear lot some one hundred feet distant. After paying for the repair, the plaintiff was handed the keys to her automobile and told to go and get her vehicle. She also was told to be careful of the accumulating snow and ice on the very portion of property that she was directed to use in walking the extended distance to her vehicle.

■ There is no question but that the plaintiff, by returning to the defendant's place of business during the continuance of the storm, subjected herself to the risk of falling on the snow and ice. However, that anticipated risk was reasonably expected to be more limited than actually encountered when she returned to the premises. The defendant, by having removed the ve-

---

2. In doing so, we are not unmindful that the vast majority of jurisdictions that have considered ice and snow—slip and fall—cases are not aligned to either rule and utilize an ad hoc approach in each case in light of those considerations set out in Restatement (Second) *Torts* § 343A (1965); Gregory G. Sarno, Annotation, *Liability for Injuries in Connection with Ice or Snow on Nonresidential Premises*, 95 A.L.R.3d 15 (1979).

hicle to the rear of its business premises and by having directed the plaintiff to retrieve it from there, had exacerbated and increased the risk of the plaintiff's falling when it required her to walk some one hundred additional feet over snow and ice that had been accumulating on unknown and difficult terrain. She was left with no choice but to do as directed if she wished to retrieve her vehicle. The very fact that the defendant's employee had informed the plaintiff that conditions were dangerous is clear evidence that the defendant was aware of the serious risk that existed. Consequently, it should have refrained from actively increasing that risk by placing her vehicle so far distant and then directing her to make the longer walk over the treacherous icy terrain.[3] See, e.g., Restatement (Second) Torts, § 343A cmt. f, illus. 5 and cmt. g, illus. 8 (1965).[4] "The linchpin in determining the existence of any duty owed to [a plaintiff is] the foreseeability of the risk of injury to [him or her] by [the defendant's] actions." Splendorio v. Bilray Demolition Co., 682 A.2d 461, 466 (R.I.1996).

■ The defendant business invitor, as we perceive from the facts in this case, chose to impose upon its business invitee a virtual Hobson's Choice.[5] She had to choose between either making the long walk over slippery terrain in order to get to her vehicle, or to return home without it during the ongoing storm as best she could. We believe that choice which was

fostered upon her, triggered in the defendant at least the minimal duty of taking some action to make safe that portion of the walkway leading to the parked vehicle. The defendant, however, did absolutely nothing. Whether that inaction amounted to a breach of the duty owed to its business invitee was a question of fact which should have been put to the trial jury.

In view of our comparative negligence rule and statute in this state, whether, under the circumstances in this case, the plaintiff should have refused to walk the extended distance to her vehicle, constituted a material factual question for the trial jury to determine. That jury might very well have concluded that both the plaintiff and the defendant had each failed to act as the reasonable prudent person would have acted under the existing circumstances. Such a finding would not, however, have precluded the plaintiff from recovering for the portion of any negligence attributable to the defendant.[6]

In determining the existence of a duty on the part of the defendant, we have considered the relevant factors such as the relationship of the parties; the scope and burden of the obligations imposed upon the defendant business invitor; public policy considerations; and notions of fairness. See Kenney Manufacturing Co., 643 A.2d at 206. In light of those considerations and in view of the unique facts present in this case,[7] we weigh the nature of the

---

3. In carrying on any activity, a property owner must use reasonable care for the safety of invitees and refrain from activities that increase the danger to invitees. See J.D. Lee & Barry A. Lindahl, 3 Modern Tort Law, § 39.10 (rev. ed. and Cum.Supp.1998).

4. Ward v. K Mart Corp., 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223, 228–32 (1990), offers a concise scholarly review of Restatement (Second) Torts § 343A.

5. A "Hobson's Choice," which entails the absence of a real alternative, is named after Thomas Hobson (1544–1631) of Cambridge, England "who rented horses and gave his customer only one choice, that of the horse

nearest the stable door." Random House Unabridged Dictionary 909 (2d ed.1993).

6. As regards the trial justice's passing reference to the plaintiff's possible assumption of the risk in coming to pick up her automobile during the storm, that was an issue for the trial jury to resolve. Hennessey v. Pyne, 694 A.2d 691, 699–701 (R.I.1997).

7. Nothing in this opinion is intended to suggest that a business invitor is required to retrieve and/or return an article or vehicle left with that business invitor, or with his or her employees, to the exact point or location where the article or vehicle was originally left by the customer. All we hold is that under

defendants particular duty as well as the plaintiff's reasonable expectations of safety as a business invitee and conclude that the plaintiff's equities weigh more heavily in her favor.

For the reasons herein above set out, the plaintiff's appeal is sustained. The judgment of the Superior Court is vacated. The papers in this case are returned to the Superior Court for a new trial.

the Connecticut Rule and the reasonable prudent person standard, any duty owed by a business invitor to an invitee is to be evaluated in light of any unusual circumstances that have been created by the business invitor and left to exist at the particular time and place and which results in injury to the business invitee.