May 23, 2024

**Supreme Court**

No. 2021-320-Appeal.
No. 2021-321-Appeal.
(NC 14-333)

(Dissent begins on Page 14)

Carol Allen          :

v.            :

Laura Sitrin, as Finance Director for   :
   the City of Newport, et al.

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2021-320-Appeal.
No. 2021-321-Appeal.
(NC 14-333)

(Dissent begins on Page 14)

Carol Allen                                    :

v.                                    :

Laura Sitrin, as Finance Director for    :
    the City of Newport, et al.

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Lynch Prata, for the Court.**  In these consolidated appeals, the

plaintiff, Carol Allen individually, and in her capacity as Administratrix for the

Estate of Kenneth MacDuff (Allen or the plaintiff),[1] and the defendants, Laura Sitrin,

as the Finance Director for the City of Newport (the city), Donald Botelho, and Ben

Bona (collectively, the city defendants), cross-appeal from two amended judgments

of the Superior Court entered in favor of the plaintiff following a nonjury trial.  The

city defendants argue that the trial justice erred by: failing to apply the Connecticut

---

[1] Kenneth MacDuff's name is spelled inconsistently in the record.  We adopt the
spelling that appears in the trial transcripts.  No disrespect is intended.

- 1 -

Rule;[2] finding that there were unusual circumstances that triggered their duty before the end of the storm; determining that Botelho and Bona owed duties in their individual capacities to the plaintiff; and finding that the plaintiff did not assume the risk of her injury. On her cross-appeal, the plaintiff argues that the trial justice erred by limiting the city's liability under the public-duty doctrine. For the reasons stated herein, we vacate the judgments of the Superior Court.

**Facts and Travel**

On February 3, 2014, Allen and MacDuff, Allen's husband,[3] went to Newport City Hall (city hall) to pay their quarterly property taxes. MacDuff dropped Allen off at the Bull Street entrance to city hall. Allen testified that when she arrived, she remembered feeling an icy rain or sleet on her face. On cross-examination, she explained that it could have been a light mix of sleet and snow. Allen made it up the steps to city hall without any difficulty, but she testified that there was a slushy mixture or "slight film" on the stairway. A bystander, Charles M. Holder Sr., testified that there was no snow accumulation on the stairway before Allen's fall, but that the stairs were slippery and wet.[4] Holder further testified that it may have

---

[2] The Connecticut Rule will be explained *infra*.

[3] The trial justice's determination that the evidence "clearly establishes that Mr. MacDuff was Ms. Allen's common-law husband" is not contested by the city defendants on appeal.

[4] Holder's testimony was presented, by agreement of the parties, through deposition because he was unavailable to testify at trial due to a medical condition.

- 2 -

been lightly snowing prior to Allen's fall. After paying her taxes, Allen began to exit the building the way she entered.

That morning, defendants Bona and Botelho were the employees responsible for treating the city hall steps with ice melt. Although Bona typically treated all the stairways and sidewalks before 8 a.m., he had not begun treating the Bull Street entrance at the time of Allen's fall. Further, Bona had neither placed warning signs at the exits nor roped off the Bull Street stairway, as he had done on prior occasions. Allen made it down the first set of stairs, but as she approached the landing, she noticed that the second set of stairs was covered with a slushy film. Consequently, she held onto the center handrail with both hands and proceeded slowly down the stairway, one step at a time.

While descending, Allen slipped and fell on the granite steps. Photographs of the scene taken approximately seven to twenty-three minutes after her fall depict "heavy, wet snow" falling and accumulating on nearby bushes, cars, railings, and people. As a result of her fall, Allen suffered a severe head injury, which induced multiple seizures and the loss of her ability to taste and smell. When Allen returned home from the hospital, she needed around-the-clock care. She could not cook, clean, or do her laundry without help from MacDuff, friends, and family. MacDuff cared for her until his death in 2017. Allen alleges that the city and its employees were negligent in failing to properly treat the stairs for adverse weather conditions.

Allen filed a complaint for negligence and, in her capacity as Administratrix of MacDuff's estate, for loss of consortium against the city, Bona, Botelho, and William R. Riccio Jr., the Director of Public Services for the city.[5]  Following a nonjury trial, the trial justice issued a written decision summarizing the facts established at trial and making findings relative to the credibility of the witnesses. He first addressed the city's duty to plaintiff.  He noted the general rule that the duty of a premises owner to clear snow and ice is not triggered until a reasonable time after a storm ends, known as the Connecticut Rule.  However, the trial justice commented that precedent "clearly suggests that there are fact patterns in which the Connecticut Rule may not apply even if winter precipitation is occurring."

Looking to the facts of the instant case, the trial justice found: that "there was intermittent light to moderate snow on the morning of February 3, 2014"; that "the temperatures on February 3, 2014[,] were falling and reached freezing (32 degrees) at 8:22 a.m."; that the photographs of the scene taken after Allen's fall show no detectable accumulation of snow on the steps, but that Allen and Holder's testimony that there was a "slight film" forming on the steps as she ascended them was credible; and that the application of ice melt "would have prevented the early accumulation of snow and the formation of ice" on the steps.  The trial justice thus found that

_____

[5] There was no evidence presented against Riccio at trial; therefore, the trial justice entered judgment in his favor.  Neither plaintiff nor Riccio have appealed that judgment.

"there was not a sufficient accumulation of snow or ice on the steps where [Allen] fell to [in]voke the Connecticut Rule."

Alternatively, the trial justice found that "[e]ven if the Connecticut Rule were to apply * * * the circumstances here present[ed] a scenario that would trigger the unusual circumstance[s] exception." The trial justice reasoned that there were unusual circumstances present because the failure to "apply ice melt and to take other protective measures that had been used in the past exacerbated the risks inherent in the use of the stairs by [Allen]." The trial justice further reasoned that the policy behind the Connecticut Rule would not be fulfilled by its application in this case because the storm was not so severe that any efforts of the city defendants to clear the steps would have been useless.

The trial justice then proceeded to address the remaining issues in the case, finding that: the public-duty doctrine did not apply; Botelho and Bona were individually liable to plaintiff; Allen was 35 percent comparatively negligent for her fall; Allen did not assume the risk of the fall; Allen's injuries were causally related to her fall; plaintiff was entitled to damages; the statutory damages cap applied to the city's liability for damages; and the statutory damages cap did not apply to the individual defendants. Thereafter, two amended judgments were entered in favor of plaintiff, against Bona, Botelho, and the city. The city defendants and plaintiff filed

- 5 -

timely notices of appeal, and this Court consolidated the appeals for briefing and argument.

**Standard of Review**

"A judgment in a nonjury case will be reversed on appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." *Quillen v. Cox*, 306 A.3d 1040, 1045 (R.I. 2024) (quoting *Boisse v. Miller*, 267 A.3d 634, 636 (R.I. 2022)). "Upon review, we accord the factual findings of a trial justice sitting without a jury great deference and consider questions of law *de novo*." *Id.* (quoting *Boisse*, 267 A.3d at 636). The existence of a legal duty and the application of the Connecticut Rule are questions of law, properly decided by the Court. *See Sullo v. Greenberg*, 68 A.3d 404, 408 (R.I. 2013).

**Discussion**

The city defendants argue that the trial justice erred by failing to apply the Connecticut Rule. They assert that the application of the Connecticut Rule does not depend upon the extent of accumulation or whether a defendant could have taken protective measures, but rather whether there was an active snowfall at the time of the injury and whether the defendant had a reasonable time to clear the accumulation. Therefore, they argue, they owed no duty to plaintiff under the Connecticut Rule

because the evidence demonstrated that the storm was ongoing at the time of plaintiff's fall.

The plaintiff maintains that the trial justice's decision to not apply the Connecticut Rule in this case was clearly supported by his findings of fact—i.e., that there was no ongoing storm and that there was no accumulation of snow or ice on the stairway. Therefore, she argues, according to these facts, it was not error for the trial justice to find that the Connecticut Rule did not apply.

It is a fundamental principle of tort law that a "defendant cannot be liable under a negligence theory unless the defendant owes a duty to the plaintiff." *Benaski v. Weinberg*, 899 A.2d 499, 502 (R.I. 2006) (quoting *Lucier v. Impact Recreation, Ltd.*, 864 A.2d 635, 638 (R.I. 2005)). "Rhode Island follows the 'Connecticut Rule' when determining the duty of care to keep a premises safe from naturally occurring accumulations of ice and snow." *Berardis v. Louangxay*, 969 A.2d 1288, 1291 (R.I. 2009). Pursuant to this rule, we recognize that a landlord or a business invitor has a duty to "use reasonable care to see that the common areas are kept reasonably safe from the dangers created by an accumulation of snow and ice which is attributed to purely natural causes." *Fuller v. Housing Authority of City of Providence*, 108 R.I. 770, 772, 279 A.2d 438, 440 (1971); *see also Terry v. Central Auto Radiators, Inc.*, 732 A.2d 713, 716-17 (R.I. 1999) (extending application of Connecticut Rule to business invitor/business invitee situation).

Therefore, "an accumulation of ice or snow upon those portions of the premises reserved for the common use * * * may make the [business invitor] liable for injuries sustained by his [invitee] which are due to such an accumulation * * *." *Fuller*, 108 R.I. at 774, 279 A.2d at 441; *see also Terry*, 732 A.2d at 716 (applying *Fuller* to business invitors). However, "[t]o require a landlord or other invit[or] to keep walks and steps clear of dangerous accumulations of ice, sleet or snow or to spread sand or ashes while a storm continues is inexpedient and impractical." *Berardis*, 969 A.2d at 1293 (quoting *Kraus v. Newton*, 558 A.2d 240, 243 (Conn. 1989)). Therefore, a business invitor has "a reasonable time after the storm has ceased to remove the accumulation of snow or ice found on the common ways or to take such measures as will make the common areas reasonably safe from the hazards arising from such a condition." *See Fuller*, 108 R.I. at 774, 279 A.2d at 441; *Terry*, 732 A.2d at 716.

The trial justice found that on the morning in question, there was "intermittent light to moderate snow" and that although the photographs taken after the fall show no detectable accumulation, Allen's testimony that there was a "slight film" forming on the steps had more weight regarding the conditions when she fell.[6] The trial

---

[6] The plaintiff incorrectly argues that the trial justice found that there was no accumulation of snow on the stairway and that there was no ongoing snow prior to Allen's fall. The plaintiff relies upon the testimony of Steve Cascione, an expert in weather conditions in the field of meteorology, for her assertion that there was no ongoing snow prior to the fall. However, the trial justice specifically rejected

- 8 -

justice therefore concluded that "there was not a sufficient accumulation of snow or ice on the steps where [Allen] fell to [in]voke the Connecticut Rule."

The application of the Connecticut Rule by this Court has never been based upon the extent of accumulation. *See Fuller*, 108 R.I. at 773-74, 279 A.2d at 440-41 (holding landlord could be liable for tenant's injuries caused by accumulation of snow and ice because landlords are equipped to "do battle with the fallen snow, the sun-melted snow now turned to ice, or the frozen rain"); *Barenbaum v. Richardson*, 114 R.I. 87, 93, 328 A.2d 731, 734 (1974) (holding trial justice did not err in instructing jury on Connecticut Rule when there was a "slight dusting"); *Sullo*, 68 A.3d at 408 (holding that dispute regarding whether there was *any* accumulation of snow at time of plaintiff's fall precluded summary judgment). Instead, the application of the rule depends upon whether the plaintiff's injuries were caused by the accumulation of snow or ice and whether the defendant was given "a reasonable time after the storm has ceased to remove the accumulation * * * or to take such measures as will make the common areas reasonably safe from the hazards arising from such a condition." *Fuller*, 108 R.I. at 774, 279 A.2d at 441; *see also Sullo*, 68

---

Cascione's opinion on the form of precipitation in Newport on the day in question because "he testified that the weather station at Newport was unmanned * * * and he used the weather reports from T.F. Green Airport for reference." Further, he determined that "the photographs depicting the scene do not necessarily depict the weather conditions at the time of the fall and f[ound] the testimony of [Allen] and * * * Holder to have more weight." He specifically credited Allen's testimony that there was a slight film on the stairway.

A.3d at 407 ("Because the rationale is to allow a reasonable time to treat surfaces rather than ineffectually fight a continuing storm, the Connecticut Rule is intended to apply to ongoing winter storms resulting in an accumulation of snow, ice, or frozen rain."); *Aubin v. MAG Realty, LLC*, 161 A.3d 1143, 1146 n.1 (R.I. 2017) (holding Connecticut Rule did not apply because plaintiff slipped on black ice that had formed the previous night instead of freshly accumulated snow).

The trial justice found that there was light to moderate snow on the morning of Allen's fall. He found credible Allen's testimony regarding the condition of the stairway at the time of her fall, and she testified that she felt either an "icy rain" or a light "mix of sleet and snow" on her face when she arrived at city hall, roughly ten minutes prior to her fall. Further, he found that Allen slipped and fell on the stairway which was slippery with a "slushy film." According to the trial justice's findings, to which we must give great deference, Allen fell due to the accumulation of snow or ice; therefore, the Connecticut Rule applies. *See Fuller*, 108 R.I. at 774, 279 A.2d at 441; *Aubin*, 161 A.3d at 1146 n.1; *see also Quillen*, 306 A.3d at 1045 (noting that trial justice's findings of fact are given great deference). Consequently, the city defendants' duty to clear the natural accumulation of slush or ice did not arise until a reasonable time after the storm ended. *Berardis*, 969 A.2d at 1292.

The trial justice made no explicit findings with regard to when the icy rain or "mix of sleet and snow" ended. Nevertheless, he found that the "unrefuted evidence

establishes that intermittent periods of light to moderate snow were falling the morning of February 3, 2014." Moreover, he relied upon the testimony of Allen to determine the weather conditions at the time of the fall, and she testified that there was a light sleet, snow, or icy rain in the minutes leading up to her fall. Photographs of the scene, taken between seven and twenty-three minutes after Allen's fall, demonstrate that the light sleet or snow had developed into a "[h]eavy, wet snow." Therefore, based upon the factual findings of the trial justice, the storm was ongoing at the time of Allen's fall, and the city defendants did not owe her a duty to clear the natural accumulation of snow and ice unless the unusual circumstances exception to the Connecticut Rule is applicable. *Berardis*, 969 A.2d at 1292.

A business invitor has a reasonable amount of time after the end of a "storm to clear snow and ice 'only in the absence of unusual circumstances.'" *Terry*, 732 A.2d at 717 (emphasis omitted) (quoting *Cooks v. O'Brien Properties, Inc.*, 710 A.2d 788, 792 (Conn. App. Ct. 1998)). If unusual circumstances are present, then the business invitor's duty of reasonable care arises before the end of the storm. *Berardis*, 969 A.2d at 1292. Unusual circumstances are those "that have been created by the business invitor and left to exist at the particular time and place and which results in injury to the business invitee." *Terry*, 732 A.2d at 718 n.7. "The linchpin of our duty analysis in *Terry* was the presence of a heightened risk * * * created by the business invitor." *Benaski*, 899 A.2d at 503-04. Accordingly, unusual

- 11 -

circumstances are present when the business invitor's conduct exacerbates the inherent risk that a plaintiff voluntarily undertakes by going out during a winter storm. *Id.* at 504; *Berardis*, 969 A.2d at 1293.

The city defendants argue that it was error for the trial justice to apply the unusual circumstances exception to the Connecticut Rule. They contend that the keystone of the unusual circumstances inquiry is whether there was a heightened risk to Allen that was created by the city defendants. Therefore, they contend, because the trial justice failed to point to any actions by the city defendants that exacerbated the risk to Allen, the decision was in error.

The plaintiff disagrees, arguing that there were unusual circumstances in this case because the city could have taken measures to reduce the risk of harm. She contends that this Court has never held that the only unusual circumstances that can trigger a defendant's duty are actions by the defendant that exacerbate and increase the risk to the plaintiff. Thus, plaintiff maintains that unusual circumstances exist when a defendant could have taken steps to mitigate the risk to the plaintiff.

This Court has held that unusual circumstances were present when a business invitor created a dangerous situation that made the risk to the invitee greater than the risk that originally existed before the invitor's actions. *See Terry*, 732 A.2d at 717-18. By contrast, we have rejected the argument that unusual circumstances were present by virtue of a business invitor's failure to take action that would have made

traveling during a storm safer. *See Berardis*, 969 A.2d at 1293 (finding no unusual circumstances where defendant business invitor undertook task of shoveling and applying ice melt earlier in day because his actions did not increase inherent risk of traveling during storm); *Benaski*, 899 A.2d at 503-04 (finding no unusual circumstances where defendant business invitor failed to follow usual practice of plowing roadway before start of business, failed to conduct daily inspections of premises, and failed to post signs warning of dangerous conditions because such actions did not exacerbate risk of commuting during storm).

The trial justice found there were unusual circumstances because there were reasonable precautionary measures that the city defendants could have taken to alleviate the danger to Allen, including putting down ice melt, posting warning signs, and roping off the stairway. However, the city defendants' failure to alleviate the danger of the accumulated snow and ice did not exacerbate the risks already inherent in traveling during such a storm. *See Benaski*, 899 A.2d at 503-04; *Berardis*, 969 A.2d at 1293. Allen voluntarily undertook the risks of traveling in slick conditions when she traveled to city hall during a snow event. The city defendants did not engage in any behavior that increased the risk to her. Therefore, there were no unusual circumstances that triggered the city defendants' duty prior to the end of the storm. *See Benaski*, 899 A.2d at 503-04; *Berardis*, 969 A.2d at 1293.

Having determined that the city defendants' duty to use reasonable care did not arise until a reasonable time after the storm ended, we need not address the public-duty doctrine, Botelho and Bona's individual liability, Allen's comparative negligence, or the statutory damages cap.

## Conclusion

For the foregoing reasons, we vacate the judgments of the Superior Court and remand for entry of judgment in favor of the city defendants.

**Justice Goldberg, dissenting.** The issue in this appeal does not rest on the city defendants'[1] legal duty or actions *during* an ongoing winter storm, but rather turns on the city defendants' legal duty and negligent failure to follow established protocols *before* the commencement of the storm. In these circumstances the Connecticut Rule does not absolve a property owner from complying with required preventative measures adopted to maintain its premises in a reasonably safe condition. The trial justice determined—and I will further detail below—that the city defendants violated established procedures instituted to protect city hall invitees from the hazards of inclement weather. These breaches occurred *before* the commencement of a winter storm and the result was predictable, foreseeable, and

---

[1] I continue the majority's designation that the city defendants collectively comprise Laura Sitrin, as Finance Director for the City of Newport, Donald Botelho, and Ben Bona.

catastrophic when an invitee slipped, fell down several stairs, and sustained grievous injuries. For the reasons discussed below, I would conclude that the Connecticut Rule does not apply to the facts of this case and does not absolve these defendants. I respectfully dissent from this unwarranted extension of the Connecticut Rule.

**Factual Background**

This incident occurred on Monday, February 3, 2014, a typical New England winter day consisting of cold temperatures with a mixture of rain and snow developing through the morning hours. Perhaps most importantly, this was a winter morning during which one or more of the city defendants expected snowfall. Despite these existing, anticipated, and predictable weather conditions, it is undisputed that defendants Ben Bona (Bona) and Donald Botelho (Botelho)—two city employees charged with maintaining the city hall premises—did not *begin* the inclement winter weather protocols until approximately 10 a.m. At approximately 10:25 a.m., plaintiff, Carol Allen (Allen), fell on the untreated Bull Street stairs as she exited city hall after paying her taxes. Allen described the stairs as consisting of a slushy mixture or a "slight film."

On February 3, 2014, temperatures were falling steadily throughout the morning. At 12:53 a.m., the temperature was 40 degrees, but at 8:22 a.m., the temperature had dropped to 32 degrees. The trial justice recounted that the evidence

reflected periods of light to moderate snow continued throughout the morning, including prior to Allen falling on the Bull Street stairs.

Bona and Botelho were both working at city hall on this fateful morning and supplied critical testimony concerning the inclement weather protocols established by the city. Although they were less than candid, the testimony makes clear—and the trial justice found—that the city defendants failed to comply with two established procedures.

Bona testified that he began his shifts at 5 a.m., including on the morning of Allen's fall. Bona testified to at least three different scenarios in which procedures required him to apply ice melt to the common areas at or around city hall: (1) when freezing temperatures combined with precipitation; (2) when snow begins "sticking" to the sidewalks (snow "sticking" to the grass was insufficient); and (3) when the city hall stairs became "sticky." After recessing for the day, Bona resumed his testimony the following day and supplemented his testimony to explain that he understood "freezing temperature" to mean "the pavements are freezing."

Bona's testimony contained other head-scratching moments. For example, Bona indicated that if it were snowing but not "sticking," he would not apply ice melt; and that if it was "snowing and frozen in temperatures," the decision to apply ice melt would "depend[]" upon the temperature of the air, sidewalks, and stairs.

Most importantly, the trial evidence revealed that Bona was confronted with the following testimony from his deposition:

> Q: "How were you made aware that the conditions required that you put Ice Melt down? Do you understand my question?"
>
> A: "Yes, sir. *Because we were expecting snow, so I kept going out to check*." (Emphasis added.)

Bona's five-hour delay (from the start of his shift) in applying ice melt treatment is inexplicable and not in accordance with the protocol for pretreatment. This delay is even more perplexing considering Bona's admission that he expected imminent snowfall that morning. Bona's lying-in-wait prestorm posture, only to begin treatment procedures after the snowfall actually began, does not bring this case within the cloak of the Connecticut Rule.

Bona's supervisor was Botelho, the foreperson of the custodial staff, who described a "mainly automatic[]" protocol concerning the application of ice melt.[2] On February 3, 2014, Botelho began his shift at or around 6 a.m. In contrast to Bona's testimony and conduct that day, Botelho testified that "[t]he ice melt goes down before City Hall opens up."

Although snow had already fallen earlier in the morning, the trial justice noted Bona's testimony that "he did not begin to put ice melt down until approximately

---

[2] By agreement of the parties, Botelho's deposition testimony was introduced at trial because of his unavailability due to medical reasons.

10:00 a.m."  It is undisputed that Bona applied ice melt to the Broadway stairs and then to the sidewalks and not the Bull Street stairs.  After applying ice melt to the sidewalks, Bona then headed to the Bull Street stairs to apply ice melt to that stairway; and discovered that Allen had already fallen on the Bull Street stairs.  This is another deviation from the protocol.

Botelho also testified that when applying ice melt, the ice melt should be applied *first* to the Broadway and Bull Street stairs, then the ice melt should be applied to the sidewalks surrounding city hall on Broadway and Bull Street.   Bona provided similar testimony concerning the protocol for applying ice melt, i.e., first, the Broadway stairs; and second, the Bull Street stairs before tackling the sidewalks.  However, it is undisputed that Bona violated the city's own procedure.  Deviating from the city's own established protocols, Bona first treated the Broadway stairs and sidewalk, and *then* proceeded to the Bull Street stairs, but it was too late.  Allen had already fallen and was seriously injured.

Based upon the foregoing events, the trial justice determined that Bona's

> "failure to apply ice melt to the Bull Street stairway immediately after he applied it to the Broadway stairway was *against protocol*.  [Bona] also failed to apply ice melt earlier in the day despite the fact that temperatures reached freezing at 8:22 a.m. and there was precipitation that morning, *which was also against protocol*."  (Emphases added.)

The trial justice also concluded that Bona and Botelho both provided "inconsistent" testimony and were generally not credible witnesses.

I reject the majority's conclusion that the city can seek refuge in the judge-made Connecticut Rule in the face of these facts.

**Analysis**

This Court has recognized that "[u]nder the Connecticut Rule, a landlord or business invitor clearly has a duty to his tenants or invitees to clear snow accumulation and treat surfaces impacted by a storm." *Sullo v. Greenberg*, 68 A.3d 404, 407 (R.I. 2013). "However, this duty does not arise until a reasonable time after the storm has ended." *Id.* We have also declared that the Connecticut Rule is not universal and applies, "only in the absence of unusual circumstances." *Benaski v. Weinberg*, 899 A.2d 499, 503 (R.I. 2006) (emphasis omitted) (quoting *Terry v. Central Auto Radiators, Inc.*, 732 A.2d 713, 717 (R.I. 1999)).

This Court has consistently stressed that the Connecticut Rule "is intended to apply to *ongoing* winter storms resulting in an accumulation of snow, ice, or frozen rain." *Sullo*, 68 A.3d at 407 (emphasis added). This Court has also explained the rationale supporting the adoption of the rule: "To require a landlord or other invit[or] to keep walks and steps clear of dangerous accumulations of ice, sleet or snow or to spread sand or ashes *while a storm continues* is inexpedient and impractical." *Berardis v. Louangxay*, 969 A.2d 1288, 1293 (R.I. 2009) (emphasis added) (quoting

- 19 -

*Kraus v. Newton*, 558 A.2d 240, 243 (Conn. 1989)); *see also Barenbaum v. Richardson*, 114 R.I. 87, 93, 328 A.2d 731, 734 (1974) ("A landlord is not required to be at his property, shovel in hand, catching the flakes before they hit the ground."). We have never held that this rationale applies *before* the storm commences or serves as a shield against a failure to comply with established practices. In contrast to the purpose of the Connecticut Rule, ample evidence exists in this case for a factfinder to conclude that the city defendants failed to take reasonable measures that were in place and designed to maintain the city hall's premise in a reasonably safe condition *prior* to the commencement of the winter storm.

Bearing in mind that Botelho declared "[t]he ice melt goes down before City Hall opens up," Bona was confronted with dropping temperatures and precipitation at 6:48 a.m.—over an hour before city hall opened, nearly two hours after he began his shift, and almost one hour after Botelho started his shift. Yet Bona and/or Botelho failed to take any action until approximately 10 a.m., by which time weather conditions had already deteriorated to intermittent periods of light to moderate snow. The trial evidence demonstrates that not only did one or more of the city defendants expect snowfall on this date, but Bona repeatedly "kept going out[side] to check." Despite already being outside with the expectation of an approaching snowfall, Bona inexplicably failed to apply any ice melt until approximately 10 a.m. Because the city defendants' omissions occurred *prior* to the commencement of the winter storm,

and in deviation of established protocols, I am of the opinion that the Connecticut Rule does not relieve or insulate the city defendants from liability in this case. I reject the "Oh well, we didn't have to do it anyways" defense in this case.

While a factfinder may very well find—and in this case did find—that the city defendants' omissions breached the duty "to exercise reasonable care for the safety of persons reasonably expected to be on the premises," *Kemp v. PJC of Rhode Island, Inc.*, 184 A.3d 712, 717 (R.I. 2018), there is no dispute that the city defendants' omissions violated the protocols established by the city to make its property safe from winter weather hazards. The failure to comply with established procedures or protocols may be considered by a factfinder in determining whether a defendant has breached the duty of care. *See Flynn v. Nickerson Community Center*, 177 A.3d 468, 480 (R.I. 2018) ("[W]e look next to the closeness of the connection between [the defendant's] purported negligence in violating its security protocols and plaintiffs' injuries."); *Seide v. State*, 875 A.2d 1259, 1272 (R.I. 2005) ("We are satisfied that a police department[']s pursuit policy, adopted as official policy governing high-speed police pursuits, may serve as a standard that the jury could compare with the defendants' conduct to determine whether there was a breach of the standard of care.").

Here, the trial justice concluded that the city defendants violated the established inclement weather protocols by: (1) failing to apply ice melt earlier in

- 21 -

the morning before snow began to fall and (2) failing to apply ice melt to the Bull Street stairway (where Allen fell) prior to treating the sidewalks. While the Connecticut Rule may have allowed the city defendants to delay responding to an ongoing winter storm, I am aware of no authority that protects landowners from taking reasonable actions to maintain a premise in a reasonably safe condition *prior* to the arrival of an expected winter storm.

## Conclusion

For the reasons discussed, I would conclude that the Connecticut Rule does not apply in these circumstances because the city defendants' omission occurred before the commencement of a winter storm. I express no opinion on any other issues presented for this Court's consideration. Consequently, I respectfully dissent.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Carol Allen v. Laura Sitrin, as Finance Director for the City of Newport, et al. |
| **Case Number** | No. 2021-320-Appeal. (NC-14-333) |
| **Date Opinion Filed** | May 23, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For Plaintiff: Mark B. Morse, Esq. |
| | For Defendants: Mark T. Reynolds, Esq. |