**Thomas ADAMS**

v.

**RHODE ISLAND DEPARTMENT OF CORRECTIONS.**

**No. 2008–125–Appeal.**

Supreme Court of Rhode Island.

June 30, 2009.

John N. Taylor, Jr., Esq., Winston-Salem, NC, for plaintiff.

Thomas A. Palumbo, Esq., St. Charles, MO, Adam J. Sholes, Esq., for defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Justice ROBINSON for the Court.

The plaintiff, Thomas Adams, appeals from a judgment of the Superior Court granting summary judgment in favor of the defendant, the Rhode Island Department of Corrections (DOC). The plaintiff alleges that he became ill after ingesting a box of raisins distributed by the DOC as part of a federal food program administered by the state for the benefit of needy citizens. The plaintiff sued the DOC, alleging that the defendant (1) negligently distributed a contaminated product; (2) had exclusive control of the product; (3) is strictly liable for distributing a product that was unreasonably dangerous for hu-

man consumption; (4) impliedly warranted the fitness of the product for human consumption; and (5) impliedly warranted that the product was merchantable for ordinary purposes.

After reviewing the record in the case, and upon careful consideration of the arguments of both parties, we determine that the hearing justice erred in granting defendant's motion for summary judgment. We therefore vacate the Superior Court's grant of summary judgment.

## Facts and Travel

The DOC operates a central distribution center for the receipt, storage, and distribution of food—including food received as part of the Emergency Food Assistance Program (TEFAP), a federal program operated under the auspices of the Department of Agriculture. As part of this program, the Department of Agriculture purchases food and ships it to the agencies in the several states that are responsible for receiving and distributing the food. In Rhode Island, the DOC is the agency designated as responsible for receiving the food and for selecting the organizations within the state that will distribute it to the public. Under TEFAP, private individuals or corporations are not permitted to carry out these functions.

It is undisputed that defendant received six cases of raisins on March 25, 2004. The raisins were stored at the DOC's temperature-controlled central distribution center in Cranston.[1] During the first two weeks of October 2004, defendant sent six cases of raisins to the Rhode Island Community Food Bank in Providence. The DOC also indicated that those raisins were then distributed by the Community Food Bank to St. Raymond's Church in Providence to be part of an advertised food giveaway for low-income persons.

The plaintiff attended a food giveaway at St. Raymond's Church on October 16, 2004, where he was provided with several items—including the box of raisins at issue in this case. The plaintiff consumed the contents of the box (fifteen ounces of raisins) later that day. At his deposition, plaintiff recalled that the box of raisins was factory-sealed and bore a label reading "USDA Inspected." As he consumed the final raisin, plaintiff noticed that it had an unusual taste and texture. Upon investigating the now-empty box, he discovered both an insect larva and insect dung near the bottom of the box.[2] The plaintiff claims that, after eating the raisins and discovering the just-mentioned items, he suffered nausea, vomiting, diarrhea, loss of sleep, and mental anguish for several days.

On April 19, 2006, plaintiff filed a complaint against the DOC seeking recovery for his physical and emotional damages. On June 21, 2007, defendant filed a motion for summary judgment. The defendant argued, both in its memorandum in support of its motion as well as during an August 14, 2007 hearing on the motion, that the public duty doctrine precludes

1. In support of its motion for summary judgment, defendant submitted an affidavit from Terrence E. McNamara, administrator of physical resources for the DOC, who represented that the raisins were stored at a temperature of thirty-five to forty degrees from March 25, 2004 to early October of 2004. Mr. McNamara also stated in his affidavit that, at that temperature, raisins may safely be stored for eighteen months.

2. The plaintiff asserts that an analysis of the substance he discovered in the box later indicated that it was the larva and droppings of an Indian meal moth; the larva was approximately two weeks old at the time that plaintiff discovered it. The plaintiff does not allege, however, that he actually consumed any larvae.

defendant's liability for any tortious conduct in this case and that no exception to that doctrine obtained in the instant case. The defendant further contended that, even if the public duty doctrine were inapplicable, defendant could not be held liable because it did not have notice of any problem with the USDA-supplied raisins.

The hearing justice granted defendant's motion for summary judgment on the ground that the public duty doctrine shielded the DOC from liability in the instant case. In her decision, the hearing justice noted that "the distribution of food that occurred in this matter is much more complex" than is the distribution of food undertaken on a regular basis by private parties such as supermarkets, convenience stores, and food banks. She further observed as follows:

> "The food here was purchased by the federal government and distributed, along with federal funds, through the Defendant to the local church where Plaintiff received it. This distribution of federal funds and food is a discretionary matter performed by a government agency. Private individuals or corporations are not permitted to perform this activity. Consequently, the Defendant's actions in this case, while on the surface are seemingly of the type that can be performed by private individuals, clearly are not such here."

The hearing justice also stated that "the Public Duty Doctrine is applicable because Defendant's actions are being performed for the public good as a whole." The hearing justice concluded that no recognized exception to the public duty doctrine was applicable in the instant case, and for that reason she granted defendant's motion for summary judgment.

Final judgment was entered on November 7, 2007. The plaintiff timely filed a notice of appeal to this Court.

## Analysis

In reviewing a hearing justice's grant of a motion for summary judgment, this Court considers the motion "on a *de novo* basis, employing the same standards used by the hearing justice." *Planned Environments Management Corp. v. Robert,* 966 A.2d 117, 121 (R.I.2009); *see also Carrozza v. Voccola,* 962 A.2d 73, 76 (R.I. 2009); *Estate of Giuliano v. Giuliano,* 949 A.2d 386, 391 (R.I.2008).

It is appropriate for a hearing justice to grant a motion for summary judgment when, after viewing the admissible evidence in the light most favorable to the nonmoving party, no genuine issue of material fact is evident from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," and the motion justice finds that the moving party is entitled to prevail as a matter of law. *Smiler v. Napolitano,* 911 A.2d 1035, 1038 (R.I.2006) (internal quotation marks omitted); *see also* Rule 56(c) of the Superior Court Rules of Civil Procedure.

The General Assembly has mandated, by virtue of G.L. 1956 § 9–31–1, that the state should be liable in all actions of tort in the same manner as a private individual or corporation, subject to certain monetary limitations. Through its enactment of § 9–31–1, the General Assembly effectively abolished the prior common law rule of sovereign immunity.

Thereafter, however, this Court carved out a narrow exception to the general rule of state liability, which exception is today known as "the public duty doctrine." In *Catone v. Medberry,* 555 A.2d 328 (R.I.1989), this Court described the rationale underlying the creation of said doctrine as follows:

"The primary purpose of the public duty doctrine is to encourage the effective administration of governmental operations by removing the threat of potential litigation. This need to protect the government's ability to perform certain functions is particularly relevant when the activity in question involves a high degree of discretion such as governmental planning or political decision making. The state would be unable to function if liability was imposed each time an individual was deleteriously affected by such activities." *Id.* at 333.

■ Our standard in determining the applicability of the public duty doctrine was enunciated rather clearly some twenty years ago. In the case of *O'Brien v. State,* 555 A.2d 334 (R.I.1989), the Court articulated the standard as follows:

"We are of the opinion that the [public duty doctrine] does not resurrect the concept of sovereign immunity but it does take into account the unquestionable fact that many activities performed by government could not and would not in the ordinary course of events be performed by a private person at all. Among such activities would be those that we have considered in our cases, such as licensing of drivers, management and parole of incarcerated prisoners, and the exercise of the police power through officers authorized and empowered by the state to perform a police function. We believe that the exercise of these functions cannot reasonably be compared with functions that are or may be exercised by a private person.

"However, the state as a landowner or an owner of motor vehicles, to mention only two of its activities, performs the *identical function that a private person might perform or which a private person might well parallel,* and therefore, the duties of the state as landowner or owner or operator of motor vehicles

should be the same as that of any private person or corporation as the Legislature has ordained in § 9–31–1." *O'Brien,* 555 A.2d at 336–37 (emphasis added).

Put most simply, "[w]hen we analyze whether an activity would be performed by a private person so as to bring it within the provisions of § 9–31–1 * * * [w]e inquire whether this is an activity that a private person or corporation would be likely to carry out. If the answer is affirmative, then liability will attach." *O'Brien,* 555 A.2d at 338; *see also DeLong v. Prudential Property and Casualty Insurance Co.,* 583 A.2d 75, 76 (R.I.1990) ("We * * * inquire whether the activity [at issue] was one that a private person or corporation would be likely to carry out."); *Catone,* 555 A.2d at 334 ("[W]hen the government or its agent engages in an activity normally undertaken by private individuals [or corporations] * * *, a duty arises under the common law to exercise reasonable care in the performance of this task.").

■ While it is true that administration of a federally funded program could, potentially, be considered a governmental function, the actual government function at issue in this case—namely, the storage and distribution of food—is an activity that business entities and private persons can and do perform regularly. The plaintiff does not argue that his alleged injuries arose out of the discretionary decisions of government agents in administering the TEFAP program; instead, his allegations concern the relatively commonplace task of storing and distributing foodstuffs. For this reason, the public duty doctrine cannot properly be invoked to shield defendant from liability in the instant case.

The hearing justice further reasoned that the public duty doctrine is applicable in this case because defendant's actions were performed for the public good. The hearing justice relied on the following lan-

guage from this Court's opinion in *Haworth v. Lannon*, 813 A.2d 62 (R.I.2003):

> "Our holding rests on the policy that the public treasury should not be exposed to claims involving acts done for the public good as a whole, given that the exercise of these functions cannot reasonably be compared with functions that are or may be exercised by a private person." *Id.* at 66 (internal quotation marks omitted).

The hearing justice reasoned that, because TEFAP is administered by defendant for the benefit of the public at large, the public duty doctrine should shield the state from liability for plaintiff's injuries.

With due respect, however, it is our view that the hearing justice read too much into the just-quoted language from this Court's *per curiam* opinion in *Haworth*. In the quoted passage, this Court was responding to the plaintiff's argument advocating for abolition of the public duty doctrine. The Court in *Haworth* was describing the public policy underlying the public duty doctrine; the Court was not seeking to set forth a new test to be used in determining when the doctrine would be applicable. The fact that a government function is undertaken "for the public good" will not suffice to bring said function within the ambit of the public duty doctrine unless it can also be shown that that function (or a closely analogous function) cannot be performed by a private party.

For the foregoing reasons, the judgment of the Superior Court granting summary judgment in favor of the defendant is vacated.[3] The papers in this case may be remanded to the Superior Court for further proceedings.

---

3. It should go without saying that our ruling today does not preclude the filing of a further motion for summary judgment on grounds other than those addressed herein.