DECISION
Before this Court is an action by the Plaintiff, Farah Paul (herein, "Plaintiff") alleging that injuries sustained as a result of her January 26, 2004 slip and fall at the J. Joseph Garrahy Judicial Complex were due to the Defendant's negligent maintenance of the property. Defendant State of Rhode Island ("State") moves for Summary Judgment pursuant to Super. R. Civ. P. 56, arguing that the Plaintiff cannot demonstrate prima facie negligence on the part of the State, and that the public duty doctrine serves to protect it from any potential liability.
 FACTS AND TRAVEL
The present litigation stems from a 2004 incident outside of the J. Joseph Garrahy Judicial Complex. Plaintiff's Complaint alleges that on January 26, 2004, "the premise [sic] outside walkway and stair was covered in ice and in disrepair." (Compl. ¶ 7.) At that time, the Plaintiff allegedly "slipped and fell onto her body causing her injuries."Id. at ¶ 11. On February 16, 2004, Plaintiff's attorney sent a letter to the State's Department of Administration wherein the State was notified that the Plaintiff was being represented by counsel.See Def. Ex. A. The letter indicates that the "injury occurred because the brick sidewalk below the stairs was in disrepair . . . [and] as a result, [the Plaintiff] fell . . ." Id. Thereafter, Plaintiff's counsel provided *Page 2 
the State with two additional letters — one in March of 2004, and one in April of the same year. Both of these letters indicate that the injury occurred because the brick sidewalk was in disrepair. In late April of 2004, Plaintiff's counsel sent another letter to the State and included four photographs of what appears to be a section of a brick patio or walkway in disrepair. See
Def. Ex. E. These pictures are of an extraordinarily low quality, making it difficult to determine the state of the stairs, if even pictured.
In 2006, upon filing her Complaint, Plaintiff alleged that the fall occurred because "the premise [sic] outside walkway and stair was covered in ice and in disrepair." (Compl. ¶ 7.) Later, in her response to interrogatories, Plaintiff indicated that, "I was on the last stair outside the building, I slipped and fell at the landing. It was covered in ice and was in disrepair or suffered from a frost heave. The area was untreated . . . I landed on my stomach with my hands flat out. My foot got caught in the crack or frost heave on the stair. . . . I tried to grab the railing to pull myself up. In doing so, I fell again. . . ." (Def. Ex. F.) At her deposition, the Plaintiff indicated that it was cold and that there was ice on the ground that day. See Paul Depo. 13:6. She also indicated that when she fell, "one foot was on the step and the other foot was down on the ground on the landing," and that she fell because "it was slippery." Id. at 14:7. After she fell, she "tried to get up and grab the railing," but she "didn't fully get up all the way . . . [and] slipped again and fell on [her] right side."Id. at 48:17-49:3. When asked why she slipped trying to get up, the Plaintiff indicated that "it was icy and those bricks on the floor, they did not help any. They did not look — they were not in good condition and there was no sand or salt on the floor."Id. at 49:18. *Page 3 
 LEGAL ANALYSIS
"When a motion for summary judgment has been filed and properly supported, a litigation death knell begins to toll. Unless the opposing parties . . . can still this doleful dirge by showing the existence of a genuine issue of material fact, all legal clamor will soon subside into a final judgment for the movant and the opponents' case will be pronounced dead in the water." Bourg v. BristolBoat Co., 705 A.2d 969, 970 (R.I. 1998). On a motion for summary judgment, the court is to determine only whether a factual issue exists. It is not permitted to resolve any such factual issues. The emphasis is on issue finding, not issue determination.O'Connor v. McKanna,116 R.I. 627, 633, 359 A.2d 350, 353 (1976); Palazzo v. Big GSupermarkets, Inc., 110 R.I. 242, 245, 292 A.2d 235, 237 (1972);Slefkin v. Tarkomian, 103 R.I. 495, 496, 238 A.2d 742 (1968). "In ruling on a motion for summary judgment the trial justice must consider affidavits and pleadings in the light most favorable to the opposing party, and only when it appears that no genuine issue of material fact is asserted can summary judgment be ordered.O'Connor v. McKanna,116 R.I. 627, 633-34, 359 A.2d 350, 353-4 (R.I. 1976) (citingMarandola v. Hillcrest Builders, Inc.,102 R.I. 46, 227 A.2d 785 (1967)).
I. NEGLIGENCE
Because a question of fact remains as to whether the Defendant was negligent in its maintenance of the J. Joseph Garrahy Judicial Complex, summary judgment is inappropriate at this time. "To establish a cause of action for negligence, a complainant must allege facts demonstrating the defendant's legal duty of care owed to the plaintiff, the defendant's breach of that duty of care, injury to the plaintiff as a result of the breach proximately caused by the defendant's negligent conduct, and damage to the plaintiff."Volpe v. Fleet Nat. Bank, 710 A.2d 661, 663 n. 4 (R.I. 1998) (citing Lutz Eng'g. Co. v. Indus. Louvers, Inc.,585 A.2d 631, 635 (R.I. 1991)). *Page 4 
It is a fundamental principle of law that "[a] defendant cannot be liable under a negligence theory unless the defendant owes a duty to the plaintiff." Lucier v. Impact Recreation, Ltd.,864 A.2d 635, 638 (R.I. 2005) (citations omitted).
Whether a duty exists in a particular case is a question of law for the trial or motion justice. Id. The Rhode Island Supreme Court has enumerated five guiding, although non-determinative factors to help determine the level of duty in negligence actions, including: "(1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach." Banks v.Bowens's Landing Corp., 522 A.2d 1222, 1225 (R.I. 1987). The Court should also take into account the factual circumstances surrounding the cause of action. See Bucki v. Hawkins,914 A.2d 491, 496 (R.I. 2007). "If no such duty exists, then the trier of fact has nothing to consider and a motion for summary judgment must be granted." Banks, 522 A.2d at 1225.
"Premises liability" is defined inBlack's Law Dictionary 1199 (7th ed. 1999) as "[a] landowner's or landowner's tort liability for conditions or activities on the premises." Premises liability law in Rhode Island "imposes an affirmative duty upon owners and possessors of property: `to exercise reasonable care for the safety of persons reasonably expected to be on the premises . . . includ[ing] and obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have discovered, the dangerous condition.'"Kurczy v. St. Joseph Veterans Ass'n, Inc., *Page 5 820 A.2d 929, 935 (R.I. 2003) (quoting Tancrelle v. Friendly IceCream Corp., 756 A.2d 744, 752 (R.I. 2000)).
The Rhode Island Supreme Court has recently applied the "Connecticut Rule"[1] to determine the extent of a business invitor's "duty of care to keep a premises safe from naturally occurring accumulations of ice and snow." Berardis v.Louangxay, 969 A.2d 1288, 1291 (R.I. 2009). A business invitor must "use reasonable care to see that the common areas are kept reasonably safe from the dangers created by an accumulation of snow and ice which is attributed to purely natural causes . . . the invitor, however, must be afforded a reasonable time after the storm has ceased to remove the accumulation." Id. at 1292. "In short, we simply provide[] that during a snow storm, a landlord has no immediate duty to shovel snow, or remove or salt and sand ice, because such duty is postponed for at least a reasonable period after storm has abated." Terry v. Cent. Auto Radiators,Inc., 732 A.2d 713, 716 (R.I. 1999); see alsoBerardis, 969 A.2d at 1292 (finding that a business invitor was not liable for not clearing "accumulated ice" from the "exterior entranceway" to his restaurant during a "severe winter storm").
Finally, our Supreme Court has indicated that:
 "[I]t is not possible to rest a case upon mere speculation, yet the plaintiff is not required, in all cases, to produce positive and direct evidence of an eyewitness to the alleged negligence. Its negligence may be established by indirect and circumstantial evidence, and by sufficient proof of other facts and circumstances from which such negligence may be fairly and reasonably inferred. Proper inferences from other proven facts, when considered in connection with all of the evidence, may satisfy reasonable minds that they lead to a logical conclusion that the injury resulted from the defendant's negligent acts." Kurczy v. St. Joseph Veterans Ass'n., Inc., 713 A.2d 766, 771 (R.I. 1998) (quoting Vrooman v. The Shepard Co., 57 R.I. 445, 449, 190 A. 452, 454 (1937)). *Page 6 
In other words, "causation is proved by inference."Gianquitti v. Atwood Medical Associates, Ltd.,973 A.2d 580, 592 (R.I. 2009) (internal citation omitted). Such "`[p]roof by inference need not exclude every other possible cause . . . it must be based on reasonable inferences drawn from the facts in evidence.'" Id. at 593 (quoting Seide v. State,875 A.2d 1259, 1268-9 (R.I. 2005)). This concept does not expand indefinitely, however. In Russian v. Life-Cap Tire Services,Inc., 608 A.2d 1145, 1147 (R.I. 1992), the court found that the plaintiff failed to "assert[] sufficient facts to satisfy the necessary elements of his negligence claim" when he did not know exactly what caused him to fall, saw nothing to trip over in the area where he fell, and remembered only that he felt something hit his shins just before falling. The absence of evidence as to what caused his fall, and how the Defendant's acts were negligent, resulted in the court's award of summary judgment. Id.
In the case at bar, the Connecticut Rule did not act to forego the Defendant's duty to maintain the premises.[2] SeeTerry, 732 A.2d at 716. Here, then, the State had a duty "to exercise reasonable care for the safety of persons reasonably expected to be on the[] premises." Kurczy,820 A.2d at 935 (R.I. 2003); see also Berardis,969 A.2d at 1292 (a business owner must "use reasonable care to see that the common areas are kept reasonably safe from the dangers created by an accumulation of snow and ice which is attributed to purely natural causes").
After a determination that a duty existed, it must be shown that the State's breach of that duty proximately caused Plaintiff's injuries. See Volpe, 710 A.2d at 663, fn. 4. Here, a material issue of fact exists with regard to proximate causation. The State repeatedly points to Plaintiff's attorney's pre-litigation statements that her fall was caused by the poor condition of the bricks. However, her complaint, deposition, and answers to interrogatories each indicated that ice was *Page 7 
also a culprit. This instance is distinguishable from theLife-Cap case which the State relies on. There, the plaintiff indicated that there was nothing in the area for him to trip on, but he felt something hit his shins. Life-Cap, 608 A.3d at 1147. The plaintiff's failure to "assert[] sufficient facts to satisfy the necessary elements of his negligence claim" was fatal. Id. TheLife-Cap Court went on:
 "The plaintiff does not assert what hit him in the shin or, in the alternative, identify anything that the defendant Life-Cap did that caused him to fall. In contrast, the plaintiff stated that the work area was clear of debris and tools and that he did not see any tools in the immediate area after he fell. The plaintiff conjectured that there may have been a jack and that he could have tripped over a jack handle, but he did not affirmatively identify any tool that could have caused his fall. No inference of the defendants' negligence may be drawn without such testimony, and the plaintiff's failure to present evidence by affidavit or deposition showing proximate cause by direct allegation or by legal inference is a failure to satisfy a necessary element of the claim." Id. at 1147-8.
In the case at bar, the Plaintiff has continually asserted that there was ice on the sidewalk, and that the bricks were defective. Unlike the circumstances in Life-Cap, the Plaintiff here actually saw the ice and defective bricks, and has therefore submitted enough evidence to prove causation by inference. Such "[p]roof by inference need not exclude every other possible cause . . . it must be based on reasonable inferences drawn from the facts in evidence." Gianquitti, 973 A.2d 593 (internal citations omitted). The Plaintiff "is not required . . . to produce positive and direct evidence of an eyewitness to the alleged negligence. [Instead, the State's] negligence may be established by indirect and circumstantial evidence, and by sufficient proof of other facts and circumstances from which such negligence may be fairly and reasonably inferred."Kurczy, 713 A.2d at 771. Here, there are sufficient facts to infer that Plaintiff's injuries were proximately *Page 8 
caused by the State's failure to remove ice from the premises and to properly maintain the brick walkway.
II. PUBLIC DUTY DOCTRINE
Because this Court finds that removing snow and ice from a walkway is an ordinary task routinely undertaken by private citizens, it finds that the public duty doctrine does not remove the State's duty to the Plaintiff. Two steps are required of this Court when conducting an analysis as to the applicability of the public duty doctrine. First, it must determine whether the public duty doctrine applies to the facts of the case. Where the government engages in conduct ordinarily engaged in by private individuals, tort liability is assessed according to ordinary standards of negligence.See Longtin v. D'Ambra Const. Co., Inc.,588 A.2d 1044, 1046 (R.I. 1991) (state owes duty of reasonable care when conduct is private in nature). The public duty doctrine, however, creates immunity for governmental actions that are discretionary in nature and not otherwise engaged in by private citizens. Bierman v. Shookster, 590 A.2d 402, 403 (R.I. 1991). Thus, the doctrine shields a governmental entity from liability only when that entity engages in activity that an individual ordinarily would not perform. Martinelli v. Hopkins,787 A.2d 1158, 1167 (R.I. 2001). Accordingly, "only after a determination that the activity at issue `could not ordinarily be performed by a private person' does the public-duty doctrine and its two exceptions — the special-duty exception and the egregious-conduct exception — become considerations."Coleman v. Windham Aviation Inc.,2006 WL 3004071 (R.I. Super. 2006) (quoting Martinelli,787 A.2d at 1167).[3]
In O'Brien v. State, 555 A.2d 334 (R.I. 1989), our Supreme Court held that *Page 9 
 [T]he state as a landowner or an owner of motor vehicles, to mention only two of its activities, performs the identical function that a private person might perform or which a private person might well parallel, and therefore, the duties of the state as landowner or owner or operator of motor vehicles should be the same as that of any private person or corporation as the Legislature has ordained in § 9-31-1.
Although the "state as landowner" performs an identical function that a private person would, Rhode Island case law proves less than "crystal clear" on this point. In 1997, our Supreme Court stated that the "[m]aintenance of government buildings is plainly a governmental function." Matarese v. Dunham,689 A.2d 1057, 1058 (R.I. 1997). Matarese involved an automobile accident in which the responsible driver was a "city employee responsible for the maintenance and the operation of government buildings [who was] on twenty-four hour call and driving a city-owned car." Id. Instead of accepting the plaintiff's argument that he was merely engaged in the proprietary function of driving, the Court concluded that he was engaged in the larger governmental function of maintaining public buildings.[4]Id.
The State cites several Rhode Island Supreme Court cases in support for its contention that negligent maintenance of a government building is protected by the public duty doctrine.See Kuhl v. Perri, 706 A.2d 1328 (R.I. 1998),Chakuroff v. Boyle, 667 A.2d 1256 (R.I. 1995); CustomFlight Sys. of New England, Inc. v. State,641 A.2d 1324 (R.I. 1994); Saunders v. State,446 A.2d 748 (R.I. 1982). In Chakuroff, the Court held that operation and maintenance of a public school was a governmental function rather than a proprietary function and therefore *Page 10 
subject to a damages cap under the State Tort Claims Act. 667 A.2d at 1258. Similarly, in Saunders, the Court ruled that:
 "There is no question that maintenance of a correctional institution is a governmental function. Consequently, in the event that a correctional officer employed by the state was guilty of negligence and was not protected by personal immunity, the state would be liable under the doctrine of respondeat superior for the negligence of its employee subject to the monetary limitation set forth in § 9-31-2." 446 A.2d at 752.
Matarese, Chakuroff, and Saunders specifically dealt with whether the action was a government function for purposes of § 9-31-2's damage cap.
In Kuhl, the Supreme Court relied on its statement inChakuroff that "the operation and maintenance of a public school is a governmental function and not a proprietary one,"Chakuroff 667 A.2d at 1258, in holding that the lower court had appropriately "rejected the Plaintiffs' reliance on the `private counterpart exception'" to the public duty doctrine. Kuhl,706 A.2d at 1329. A similar question arose in Custom Flight, where a pilot struck a deer when landing an airplane at Block Island Airport. 641 A.2d at 1324. In applying the public duty doctrine to shield the State from liability, the Court held that "a public airport is exclusively an activity performed by a public entity." Id.
Many Superior Court cases have also held that the operation and maintenance of government buildings is not an activity that a private individual would perform. See Brady v. State, No. CIV.A. 99-0009, 2002 WL 1035431 at * 7 (R.I. Super. May 10, 2002). In Brady, the plaintiff slipped on the icy brick area outside of the Rhode Island State House. Id. at *1. When addressing whether the public duty doctrine applied to the removal of snow and ice, the trial Justice noted that, "snow and ice removal is an activity in which private persons and corporations are typically engaged. However, if a more expansive view of the activity involved is taken, such *Page 11 
that plaintiff's complaint is based not on inadequate snow and ice removal but rather on the improper maintenance of a government building, then Plaintiff's argument fails." Id. at 6. Ultimately, the court held that the public duty doctrine did not apply because "the activity involved [was] the state's failure to properly maintain the plaza area of the State House, as evidenced by its inadequate removal of ice and snow, which is not normally an activity that private persons or corporations perform."Id.
In case law subsequent to Brady, the applicability of the public duty doctrine became muddled. In Coleman v. WindhamAviation Inc., No. KC 2004-0985, 2006 WL 3004071 at *7 (R.I. Super. Oct. 19, 2006), this Court examined — for purposes of the public duty doctrine — whether the operation of the Westerly State Airport was an "activity that an individual ordinarily would not perform."Id. at *2. The Coleman court held that:
 "it is clear that the public duty doctrine is not intended, and by no means would it advance its doctrinal purpose, to protect governmental entities that are not performing discretionary governmental functions but rather are performing an act that could be carried out by private individuals or corporations. Based on these requirements, this Court does not find that RIAC's operation of the Westerly State Airport, nor any tortious conduct that may be found to have arisen from this operation, should be protected under the public duty doctrine." Id. at *7.
There, the court noted that 1092 of the 5261 airports operating in the United States at that time were privately owned (21%).Id.
Recently, our Supreme Court addressed the public duty doctrine inAdams v. Rhode Island Dept. of Corrections,973 A.2d 542 (R.I. 2009). In Adams, the plaintiff became ill after eating a box of raisins distributed by the Department of Corrections as part of a federal food program administered by the state for the benefit of needy citizens. The Court inAdams took a narrower view of the activity at issue than it did in Brady or in Matarese. Noting "that *Page 12 
administration of a federally funded program could, potentially, be considered a governmental function," the Court found that "the actual government function at issue in [Adams] namely, the storage and distribution of food is an activity that business entities and private persons can and do perform regularly." Id. at 546. The Supreme Court, therefore, held that the public duty doctrine could not properly be invoked, as "the plaintiff does not argue that his alleged injuries arose out of the discretionary decisions of government agents in administering the TEFAP program; instead, his allegations concern the relatively commonplace task of storing and distributing foodstuffs." Id.
In explaining the public duty doctrine, the Adams court reiterated language from its O'Brien holding; stating that, "the state as a landowner . . . perform[s] the identical function that a private person might perform or which a private person might well parallel, and therefore, the duties of the state as a landowner . . . should be the same as that of any private person or corporation. . . ."Id. at 546 (quoting O'Brien, 555 A.2d at 336-7). On April 20, 2010, our Supreme Court once again had a brief opportunity to comment on the public duty doctrine. In a footnote, the Court acknowledged that, "a governmental entity engaged in a proprietary activity has a duty to maintain its parks and other lands in a reasonably safe condition for people who are invited onto the land." Berman v. Sitrin, 991 A.2d 1038, 1044, fn 7 (R.I. 2010) (citing Brindamour v. City of Warwick,697 A.3d 1075, 1077 (R.I. 1997)). The footnote also recognized an "exception when the governmental entity acts negligently while performing a proprietary function including acting `as a landowner.'" Id.
Recent case law has made the present analysis challenging. The notion that the maintenance of a public building is a government function (See Chakuroff, 667 A.2d 1256; Saunders,446 A.2d 748; Kuhl, 706 A.2d 1328; Matarese,689 A.2d 1057) has yet to be changed *Page 13 
by our Supreme Court. However, the Superior Court has indicated that ice and snow removal is not a government function, and the Supreme Court has yet to disagree. See Brady,2002 WL 1035431 at *6. In Brady, the Superior Court chose to take a more expansive approach and analyzed the ice removal as a part of the building maintenance. This holding was consistent with the Supreme Court's broad rationale, previously articulated inMatarese. There, the action at issue was viewed not as driving, but as the maintenance of public buildings. More recently in Adams, however, our Supreme Court seems to have shied from this expansive approach. Instead of choosing to analyze the act as the "administration of a federally funded program," the Court instead viewed it as the "relatively commonplace task of storing and distributing foodstuffs." Adams, 973 A.2d at 546.
This Court now faces the challenge of determining whether the case at bar should be subject to an analysis characterized by an expansive view of the factual circumstances underlying the government's purpose, as was the case in the Matarese
decision; or if the Court should instead adhere to the narrower approach taken more recently in Adams, where the government's overall purpose in providing food to the underprivileged was reduced to the "relatively commonplace task of storing and distributing foodstuffs." Adams, 973 A.2d at 546. Following theMatarese logic would lead to an acknowledgement that the removal of ice from a building's walkway is itself part of maintaining that building. Conversely, adherence to theAdams line of thinking would result in a determination that removal of ice and snow is an act commonly undertaken by the public, and therefore not subject to the public duty doctrine. Notably, in Brady, this Superior Court stated that, "snow and ice removal is an activity in which private persons and corporations are typically engaged." Brady,2002 WL 1035431 at *6 (but holding that "the activity involved [was] the state's failure to properly maintain the plaza area of *Page 14 
the State House, as evidence by its inadequate removal of ice and snow, which is not normally an activity that private persons or corporations perform.").
This Court finds that the public duty doctrine does not shield the State from liability in the case at bar. In so holding, this Court follows the doctrine's narrower view, recently employed by our Supreme Court in Adams. Such an approach leads this Court to view the conduct at issue as the ordinary task of snow and ice removal, one which is frequently performed by private citizens, and not a discretionary governmental task. As such, the State may not shield itself from liability by invoking the protections afforded by the public duty doctrine.
 CONCLUSION
The Plaintiff has submitted sufficient competent evidence to survive the State's motion for Summary Judgment. A question of fact still exists as to whether negligent acts undertaken by the Defendant were the proximate cause of Ms. Paul's injuries. Additionally, this Court finds the State's assertion that the Public Duty Doctrine serves to bar it from liability unconvincing. As it holds that the act of removing snow and ice is an ordinary task routinely undertaken by private citizens, the State's Motion for Summary Judgment is denied.
[1] "If you find that the plaintiff fell during an ongoing storm of freezing rain, sleet and/or snow, and that the ice or snow caused the fall, then you must find for the defendants [only in the absence of unusual circumstances]." Cooks v. O'Brien Properties,Inc., 710 A.2d 788, 792 (Conn. 1998); see also Reardon v.Shimelman, 128 A. 705 (Conn. 1925) (originally establishing the "Connecticut Rule" in the landlord-tenant context).
[2] Defendant has not alleged that an ongoing storm negated any duty to clear ice from the premises, and Plaintiff testified that it was not snowing or raining at the time of the accident.See Paul Depo. 13:6-18.
[3] As the Plaintiff "does not assert that the special duty or egregious conduct exceptions apply in the case at hand," the Court does not address these exceptions here. (Pl.'s memo in Objection to Motion for Summ. J. p. 6, fn. 2.)
[4] It should also be noted that the court found that G.L. 1956 § 9-31-3 applied, and therefore "bar[red] the addition of interest to the judgment against the city." The state admitted liability, and the trial was on the issue of damages only. Based on the above cited statute, the Court did not award the plaintiff with pre-judgment interest. Section 9-31-3 states:
 "In any tort action against any city or town or any fire district, any damages recovered therein shall not exceed the sum of one hundred thousand dollars ($100,000); provided, however, that in all instances in which the city or town or fire district was engaged in a proprietary function in the commission of the tort, the limitation of damages set forth in this section shall not apply."