**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2336-22

HAYDEE GALLARDO,

    Plaintiff-Respondent,

v.

WALMART, DEBRA LEWIS,
WAL-MART STORES, INC.,
UNION 22 PLAZA, LLC,
WAL-MART REAL ESTATE
BUSINESS TRUST, and
WAL-MART STORES EAST, L.P.,

    Defendants-Appellants,

and

LAND PROS OF NEW JERSEY, LLC,

    Defendant-Respondent.

_____

Argued April 29, 2024 – Decided May 7, 2024

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3524-16.

Matthew D. Vodzak argued the cause for appellants (Fowler Hirtzel McNulty & Spaulding, LLC, attorneys; Matthew D. Vodzak, of counsel and on the briefs).

Paul K. Caliendo argued the cause for respondent Haydee Gallardo (Gill & Chamas, LLC, attorneys; Paul K. Caliendo, of counsel; Kaeleigh P. Christie, on the brief).

PER CURIAM

Defendant Walmart Stores East, L.P. (Walmart) appeals from a March 20, 2023 order entering a judgment in favor of plaintiff Haydee Gallardo following a jury trial of her slip and fall case. We vacate the judgment and remand for a new trial for the reasons expressed in this opinion.

On January 3, 2015, at approximately 1:30 p.m., plaintiff slipped and fell at a Walmart in Union. Prior to the winter of 2014-15, Walmart hired Land Pros of New Jersey, LLC (Land Pros)[1] to perform snow and ice removal for its property. John Fierro, owner of Land Pros, was deposed and testified at trial. He explained that to clear Walmart's lot, Land Pros typically used a salt-spreading snowplow truck, front-end loader, and had a shed on-site with shovels and bagged deicing agent. At two inches of snow accumulation, Land Pros would plow and provide "salt services as needed."

---

[1] Land Pros was granted summary judgment before trial and is not a part of the appeal.

Walmart provided an exemplar scope of work, which detailed the "scope of work for snow plowing services." It stated: "In preparation for large snow storms without forecasted rain or freezing precipitation, [Land Pros] shall apply anti-icing or deicing agents to the site before snowfall (commonly known as a pretreatment)."

The day before plaintiff's fall, Land Pros cleared Walmart's parking lot. On the morning of the fall, there was no snow on the surface of the lot. However, around 11:30 a.m., sleet, snow, and rain began to fall and continued until 3:00 p.m., and it mainly continued to rain through the evening and night. That day, from 12:35 p.m. to 1:15 p.m., Land Pros applied salt to the parking lot and walkways nearest the entrance to the Walmart. Fierro testified he spread the salt and did not return. Nor did he pretreat the lot with salt before precipitation began, because:

> if you put the rock salt down too early, what would happen is the vehicular traffic would grind it up and it could pulverize it and turn it to dust. If it starts raining before that, it also could wash it away. So [the] optimum time is to time things and monitor everything[,] and be there as the snow's starting. We put down the . . . salt. The granular crystal starts reacting with the snowflake, creates the brine, which is what melts the snow.

Plaintiff testified the Walmart parking lot was "very slushy." Her son drove her to the store and when they parked in the lot, plaintiff exited the car and "look[ed] straight ahead" as she walked, "being very careful because it was very slushy." She then slipped and fell on "[t]he slushy ice, snow." Plaintiff, her husband, and daughter testified about her injuries from the fall. The jury saw photographs of the parking lot at the time of plaintiff's fall.

A meteorologist testified about the parking lot photographs and noted there was a "slushy buildup" on the lot. He opined "as soon as [someone] step[s] on . . . slushy s[n]ow, it's very high water content, [and] it immediately goes right into ice" and causes people to slip and fall on surfaces where it builds up. He noted "[t]here was no snow or any snow accumulation on the ground" the night before the accident.

The meteorologist explained, on the day of the accident, "by 11:30 [a.m.] into noon the temperature was up into about the upper [thirties] and the freezing point again is [thirty-two] degrees Fahrenheit. . . . In . . . the accident incident location [there was] a wintery mix of snow, sleet[,] and rain . . . ." He stated "between 11:30 a.m. and noon and then shortly after, . . . the rain, snow[,] and sleet became primarily snow and sleet." At 1:30 p.m., the time of plaintiff's fall, "there was snow and sleet falling and there was about a trace to .01 inches [of

4

snow,] and 0.1 [inches] is the smallest amount that you can measure with a ruler . . . for snow and sleet accumulation."

John Nelson Wiest, an expert in snow and ice management, also testified at trial. In formulating his opinion, he relied on the depositions of plaintiff, Fierro, and Walmart employees, as well as weather reports, the service agreement between Walmart and Land Pros, Land Pros' snow logs, and eighteen other items, which we need not detail here. Wiest prepared multiple reports, one of which found there "was formation of ice on the property that went untreated until the slip and fall of [plaintiff]." He described the ice as an "unreasonably dangerous condition," and concluded the condition caused plaintiff's fall.

Another Wiest report stated: "Fierro's application of salt, once accumulation occurred, decreased the overall traction of the surface" and "applying deicer as in this case will cause increased slickness if the surface/ground temperature is around or above [thirty-two degrees]." The report concluded "the manner in which . . . Fierro addressed the conditions at Walmart required/caused/created the further need not only for him but for Walmart to . . . follow-up by clearing the resulting snow and slush."

A-2336-22

Wiest testified that Land Pros "throwing de-icer on . . . snow already on the ground," was "[a]bsolutely not" acceptable by industry standards. He explained the ground temperature is different from the "ambient," or air temperature, and on the day of the accident, the ground would have been colder than the air. There was snow and sleet on January 3, 3015 because the air was "not cold enough to make it all snow." Therefore, with

> [t]he ground temperature being at least freezing, [thirty-two] degrees, when warmer water, liquid hits it, it immediately becomes black ice. You can't see it. . . . [M]ost times you can't see it. The way people experience it is when they take a flip through it and hurt the[m]self.
>
> So, one . . . thought here is that when he put salt[,] and apparently not enough salt to melt it all[,] because we have the pictures of what the result was, when he put the salt down, now he throws it on top of the snow and that snow melts and runs down[,] and when it hits that cold untreated surface it becomes black ice. So he essentially exacerbated the condition by throwing water on it, which is what he did.

An assistant manager at Walmart testified about the company's standard operating procedure, available to all employees through an employee portal, which required employees to spread deicing agent or sand on sidewalks around entrances and exits and provided shovels for store associates to use where snow

6

and ice can accumulate. She reviewed photographs of the parking lot on the day of the accident and testified the surface "should have been better cleaned off."

Praveen Kadimcherla, M.D. was plaintiff's doctor. He testified she had disc herniations in her lumbar spine from the fall. He performed a microdiscectomy on plaintiff and further recommended lumbar fusion, and explained that even with corrective surgeries, plaintiff is expected to experience "pain in the low back to some degree for the rest of her life." Dr. Kadimcherla testified the approximate "standard" costs for plaintiff's surgeries were $159,000 for the microdiscectomy, and $255,000 for the fusion. He billed $75,000 for the microdiscectomy because "depending on the patient, you must get two, three percent of what you charge."

Walmart presented the testimony of a medical bill audits expert. After auditing plaintiff's existing medical bills, she found the "final recommended balance for [plaintiff's] treatment was $7,200.30." She did not opine about plaintiff's future medical expenses.

Walmart requested the court tailor the jury charge to include language regarding the ongoing storm doctrine. The proposed charge stated:

> In New Jersey, the law is that a property owner or business does not have to remove snow or ice from the property until a reasonable amount of time after the storm ends. In this case, the evidence shows that . . .

A-2336-22

[p]laintiff slipped in the roadway during an ongoing snowstorm.

There is an exception to this rule that you have to consider.

A commercial landowner may be liable if their actions increase the risk to pedestrians and invitees of their property, for example, by creating unusual circumstances where the defendant's conduct exacerbate[s] and increase[s] the risk of injury to the plaintiff. In this case, . . . [p]laintiff claims that when Walmart's snow contractor applied salt on the ground, during the snowstorm, an unusual circumstance was created, that increased the risk that pedestrians would fall. Walmart denies that the application of an ice melting agent, during a snowstorm, created an unusual circumstance, which increased inherent hazards to pedestrians, like . . . [p]laintiff.

The judge declined to include the ongoing storm doctrine in the jury charge. The seminal case about the doctrine was <u>Pareja v. Princeton International Properties</u>, 246 N.J. 546 (2021), which our Supreme Court issued before the trial in this case concluded. The judge said he understood <u>Pareja</u> to mean that

during a continuing storm, the landowner . . . [including] le[s]sees and contractors, have no absolute duty to go out and do something during a continuing storm. Caveat, if you do . . . [something], there's already all this law in place that says if you go out and do it, you'd better make sure you do it right because now you've undertaken the duty.

The jury was charged on general negligence principles, including negligence and ordinary care, foreseeability, and duties owed to invitees. Walmart objected, but the judge again declined to include language regarding the ongoing storm doctrine because "it would bring confusion into the jury in the [c]ourt's view."

The jury returned a verdict for plaintiff in the amount of $1,127,941, including $500,000 for pain and suffering, $213,941 for past medical expenses, and $414,000 for future medical expenses. The judge denied Walmart's subsequent motion for a new trial, judgment notwithstanding the verdict, or remittitur. On March 20, 2023, a judgment was entered for $1,328,658.59, reflecting a molded award for past medical expenses and prejudgment interest.

I.

Walmart contends the trial judge should have instructed the jury on—or considered when adjudicating its pre- and post-trial motions—the ongoing storm doctrine adopted in Pareja. Under the doctrine "a landowner does not have a duty to remove snow or ice from public walkways until a reasonable time after the cessation of precipitation." Pareja, 246 N.J. at 548. Walmart argues Pareja applies because plaintiff did not dispute that she fell while snow and rain were ongoing.

9 <span>A-2336-22</span>

Walmart argues the exceptions to the ongoing storm doctrine did not exist here. Those exceptions emanate from other jurisdictions and hold that commercial landowners may be liable if their actions increase risk by creating unusual circumstances where the defendant's conduct "exacerbate[s] and increase[s] the risk" of injury. Terry v. Cent. Auto Radiators Inc., 732 A.2d 713, 717-18 (R.I. 1999). Terry relied on a Connecticut case, Kraus v. Newton, 558 A.2d 240, 243 (Conn. 1989), for that proposition. According to Walmart, no state, including Connecticut, has defined "unusual circumstances," but Connecticut law does not consider a defendant's status in determining if one exists. See Sinert v. Olympia & York Dev. Co., 664 A.2d 791, 793 (Conn. App. 1995). In other words, a defendant's status as a commercial landowner does not establish an unusual circumstance that would impose a heightened duty of care.

Rather, the unusual circumstance exception requires something extraordinary that increases the risk to invitees. Walmart argues shoveling or spreading salt/anti-skid material during a storm is not extraordinary but is instead common and expected. Defining pretreatment as an unusual circumstance could create a "perverse incentive for landowners to avoid any pre[]treatment or snow removal during storms, because doing so could trigger an exception to the ongoing storm doctrine and expose them to liability."

Walmart asserts the court improperly denied its motion for summary judgment because Land Pros was granted summary judgment based on the ongoing storm doctrine. The court's ruling on Walmart's motion was contrary to the law of the case and it cannot be held liable for the negligent retention of Land Pros where Land Pros was not found to be negligent.

Walmart contends plaintiff presented no evidence of a pre-existing condition that increased the danger to invitees. In this regard, Walmart argues the trial judge erroneously allowed Wiest to render a net opinion. Although Wiest's expert reports cited several objective standards, his opinion that applying salt to a snow or ice-covered surface creates black ice and increases the risk to people walking on it did not rely on those standards. Rather, Wiest offered an opinion based on personal belief. Moreover, none of Wiest's reports mentioned black ice, and plaintiff testified she fell on slush or slushy snow, not ice. Therefore, the court should have granted Walmart's pre-trial motion to bar Wiest from testifying.

Walmart further contends the trial judge erred when he refused to charge the jury on Pareja and the ongoing storm doctrine. It notes the judge based his decision on the lack of a model jury charge, but this did not justify declining to charge the jury on the applicable law.

A-2336-22

Walmart argues the trial judge should have remitted the verdict or ordered a new trial on damages because plaintiff received a "windfall for [her] future medical expenses." It claims the award was disproportionate to the injury and shocks the judicial conscience. It contends plaintiff's recovery for past medical expenses should be limited to the amount paid and accepted by a medical provider, not the amount billed. Moreover, plaintiff's award for future medical expenses should also be limited because: she has yet to undergo the spinal fusion surgery her doctor said was necessary, despite the injury occurring eight years ago; and her doctor testified he "almost never" collects an entire charge from a patient. Therefore, the court should have remitted the award for future medical expenses "to the highest amount supported by the evidence: [three percent] of the $414,000." We address these arguments in turn.

## II.

### Ongoing Storm Doctrine

In Pareja, the plaintiff slipped, fell, and injured himself on a driveway apron, which was private property owned by the defendant, Princeton International. 246 N.J. at 548. In the early morning hours prior to the incident, freezing rain, light rain, and sleet had fallen. Id. at 549. At the time of plaintiff's injury, precipitation was ongoing. Ibid.

Our Supreme Court held "commercial landowners do not have a duty to remove the accumulation of snow and ice until the conclusion of the storm." Id. at 558. In adopting this rule, the Court relieved commercial landowners of the duty to continuously clear snow and ice from their property throughout the duration of an inclement winter weather event. Id. at 557. The Court held "it is categorically inexpedient and impractical to remove or reduce hazards from snow and ice while the precipitation is ongoing." Id. at 558.

However, the Court noted "unusual circumstances may give rise to a duty before" the conclusion of a storm and identified two exceptions to the no-duty rule for commercial landowners during ongoing storms. Ibid. First, commercial landowners may be liable "if their actions increase the risk to pedestrians and invitees on their property, for example, by creating 'unusual circumstances' where the defendant's conduct 'exacerbate[s] and increases[s] the risk' of injury to the plaintiff." Id. at 559 (alterations in original) (quoting Terry, 732 A.2d at 717-18). The Court pointed out that the Supreme Court of Rhode Island held "'unusual circumstances' existed where a defendant 'actively increase[ed] . . . [the] risk [of injury] by placing [the plaintiff's] vehicle so far distant and then directing her to make the longer walk over the treacherous icy terrain.'" Ibid. (alterations in original) (quoting Terry, 732 A.2d at 718).

13

Second, the Court held "a commercial landowner may be liable where there was a pre-existing risk on the premises before the storm." Ibid. Under this second exception, a landowner may be liable if it "failed to remove or reduce a pre-existing risk on the property, including the duty to remove snow from a previous storm that has since concluded, [they] may be liable for an injury during a later ongoing storm." Ibid.

Pursuant to these principles, we conclude the trial court did not err when it denied Walmart's pre-trial summary judgment motion under the ongoing storm doctrine. Summary judgment is only proper where "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Here, there was a genuine dispute whether Walmart's conduct, through its contractor Land Pros, made the parking lot more dangerous on the day of the accident. Under Pareja and the facts of this case, the question of whether spreading salt on snow during the storm was an unusual circumstance increasing or exacerbating the risk to plaintiff was disputed and was for the jury to decide.

We next address the sufficiency of the jury instruction on Walmart's duty. At the outset, we note appropriate and proper jury instructions are essential for a fair trial. Prioleau v. Ky. Fried Chicken, Inc., 223 N.J. 245, 256 (2015).

"[E]rroneous instructions are poor candidates for rehabilitation as harmless, and are ordinarily presumed to be reversible error." State v. McKinney, 223 N.J. 475, 495-96 (2015) (quoting State v. Afanador, 151 N.J. 41, 54 (1997)). Certain jury instructions are so crucial to a jury's deliberations that error is presumed to be reversible. Id. at 495. "An erroneous jury charge 'when the subject matter is fundamental and essential or is substantially material' is almost always considered prejudicial." State v. Maloney, 216 N.J. 91, 104-05 (2013) (quoting State v. Green, 86 N.J. 281, 291 (1981)).

Since Pareja, the model jury charges have been revised and now account for the ongoing storm doctrine. The relevant instruction reads:

> A commercial property owner may have a duty to clear public sidewalks abutting their properties of snow and ice for the safe travel of pedestrians. Maintaining a public sidewalk in a reasonably good condition may require removal of snow or ice or reduction of the risk, depending upon the circumstances. The test is whether a reasonably prudent person, who knows or should have known of the condition, would have within a reasonable period of time thereafter caused the public sidewalk to be in reasonably safe condition.
>
> [When there was an ongoing storm or a dispute as to whether there was an ongoing storm, add the following language:] However, a commercial property owner does not have a duty to keep sidewalks on its property free [from] snow or ice during an ongoing storm. A commercial property owner's duty to remove snow and ice hazards arises not during a storm, but

rather within a reasonable time after the storm. There are two exceptions that may give rise to a duty before then. First, a commercial property owner may be liable if its actions increase the risk to pedestrians and invitees on their property. Second, a commercial property owner may be liable where there was a pre-existing risk on the premises before the storm.

[Model Jury Charges (Civil), 5.20B, "Liability for Defects in Public Streets and Sidewalks: Liability of Owner of Commercial Property for Defects, Snow and Ice Accumulation and Other Dangerous Conditions in Abutting Sidewalks" (rev. Nov. 2022) (footnotes omitted).]

The trial judge should have instructed the jury on the ongoing storm doctrine. We part ways with the judge's view that charging the jury on the doctrine would have confused them. The doctrine does not establish a blanket no-duty rule and has two clear exceptions, which are not beyond the ken of the average juror. The jury should have had the option to consider whether Walmart's conduct "'exacerbate[d] or increase[d] the risk' of injury to . . . plaintiff," or whether the application of the deicing agent was a normal circumstance of an ongoing storm. Pareja, 246 N.J. at 559.

For these reasons, we vacate the judgment and remand for a new trial. If the matter is re-tried, the court shall instruct the jury using the revised model charge on the ongoing storm doctrine as a starting point.

16

## III.

## Net Opinion

"The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Townsend v. Pierre, 221 N.J. 36, 53-54 (2015) (alterations in original) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)). A net opinion is "a bare conclusion unsupported by factual evidence." Creanga v. Jardal, 185 N.J. 345, 360 (2005). To avoid a net opinion, the expert must "'give the why and wherefore' that supports the opinion." Townsend, 221 N.J. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)).

Experts are required to "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable." Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). The net opinion rule is a "prohibition against speculative testimony." Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013) (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)).

We review a trial court's decision to admit expert testimony for an "abuse of discretion." Parker v. Poole, 440 N.J. Super. 7, 16 (App. Div. 2015) (quoting

Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008)).  Reversal is warranted only if the error "is of such a nature as to have been clearly capable of producing an unjust result."  Ibid. (quoting R. 2:10-2).

Wiest did not provide a net opinion.  Not only did he identify the multiple sources of information he relied upon in his testimony, but he also prepared multiple pretrial reports based on the same standards.  Wiest was qualified as an expert in snow and ice removal and maintenance, he had several decades of experiential and professional knowledge, and thoroughly explained how the dangerous condition was created.  His testimony consisted of more than "a bare conclusion unsupported by factual evidence."  Creanga, 185 N.J. at 360.

The trial judge did not err in allowing Wiest to testify about the formation of ice through the application of deicing agent or salt to accumulated snow.  His testimony was consistent with his report, which found ice had formed on the property, creating an "unreasonable safety hazard."  Wiest explained "Fierro's application of salt, once accumulation occurred, decreased the overall traction . . . . [A]pplying deicer as in this case will cause increased slickness if the surface/ground temperature is around or above [freezing]."  Further, his finding Land Pros created ice by melting the snow and allowing it to refreeze on the ground is consistent with plaintiff's testimony she slipped on "slushy ice."

The court did not abuse its discretion in denying the motion to bar Wiest's testimony.

IV.

Remittitur

Finally, we need not discuss every facet of the arguments raised by Walmart regarding remittitur of the jury award because we have remanded for a new trial. However, because Walmart's challenge to the medical expense portion of the jury award may arise again if the matter is retried, we address Walmart's argument to provide the trial judge and the parties guidance.

We begin by noting "[a] jury's verdict, including an award of damages, is cloaked with a 'presumption of correctness,'" which "is not overcome unless a defendant can establish, 'clearly and convincingly,' that the award is 'a miscarriage of justice.'" Cuevas v. Wentworth Grp., 226 N.J. 480, 501 (2016) (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 596, 598 (1977)). "[E]ven a seemingly high award should not be disturbed; only if the award is one no rational jury could have returned, one so grossly excessive, so wide of the mark and pervaded by a sense of wrongness that it shocks the judicial conscience, should a court grant a remittitur." Id. at 500.

"[W]hen considering a remittitur motion, a court must view 'the evidence in the light most favorable to the plaintiff.'" Id. at 501 (quoting Johnson v. Scaccetti, 192 N.J. 256, 281 (2007)). "[T]he court must give 'due regard to the opportunity of the jury to pass upon the credibility of the witnesses.'" Ibid. (quoting He v. Miller, 207 N.J. 230, 248 (2011)). "The standard for reviewing a damages award that is claimed to be excessive is the same for trial and appellate courts, with one exception—an appellate court must pay some deference to a trial judge's 'feel of the case.'" Ibid. (quoting Johnson, 192 N.J. at 282).

We reject the argument the verdict should be reduced to account for the fact plaintiff's doctor may not collect the entire cost for past medical treatment. Merely because plaintiff's doctor testified that he does not always collect the total amount billed to patients does not mean plaintiff should not be fully compensated for her damages. Her doctor numerically outlined the costs of her medical expenses and explained they did not account for unforeseen complications to her condition. Plaintiff provided objective evidence of the costs of her medical treatment. There is no foolproof means for predicting plaintiff's future medical costs. Therefore, the trial judge did not err by denying remittitur based on the facts presented at trial and the jury's award.

Vacated and remanded for a new trial.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION